WILLIAM H. AVERILL, Respondent, *v.* AMZI L. BARBER *et al.*, Appellants.

*N. Y. Supreme Court, First Department, General Term, July 9, 1889.*

1, *Corporation. When a stockholder may sue.*—An individual stockholder has a right to sue in his own name to enforce a cause of action growing out of the alleged misconduct of the directors or managing stockholders, upon a refusal of the corporation to assert its rights, or upon circumstances showing that any attempt to get it to do so, will be ineffectual, where it is friendly rather than hostile to the defendants, and will not enforce the rights which he seeks to assert in his action.

    See Note at the end of this case.

2. *Same. Accounting.*—Where the directors have acquired certain patents in their own names, which should have been taken in the name of the corporation, and transferred them to another corporation, a decree that such directors account and pay over all profits realized by them from the patents to the receiver, is proper.

3. *Same.*—The assignee company, if it acquired the patents from the directors, who held the legal title, without notice of any equity existing in behalf of the former corporation, can not be made to account for profits which it has realized from the use of the patents.

4. *Appeal. Intermediate orders.*—Intermediate orders are not reviewable upon an appeal from an interlocutory judgment.

Appeal from an interlocutory judgment directing an accounting by certain defendants to a receiver for all profits, etc., derived by them from patents acquired by them

which in equity were adjudged to belong to a corporation of which they were directors.

The following opinion was delivered at special term, by PATTERSON, J.:

"This action has been tried in a very unsatisfactory manner, not in consequence of any fault of counsel, (for, so far as it has been heard by me, it has been well and effectively presented by both sides,) but from the fact that the whole of the plaintiff's case has by consent been put in on a record of a trial had a year ago before another judge, and I am obliged to take the evidence into consideration upon his rulings, and to give effect to the testimony then admitted. I have gone over that record with extreme care, and I may say, critically; partly with the view of ascertaining if I could with propriety revise some of the rulings upon evidence. Under the circumstances, I am compelled to adopt those rulings. I should not, perhaps, have made some of them had the questions been presented to me originally, but without the benefit of the arguments made before him, and not knowing what reasons prevailed with the learned judge in admitting evidence, I cannot now undertake to review what he passed upon, and on this submission say what was and what was not (if anything) improperly admitted. It is understood that the exceptions of the defendants to the rulings referred to apply on this trial, and the evidence came in with that understanding. I make these remarks in the outset, because the defendants' counsel has claimed that I should make specific rulings now on every question of evidence passed upon by the learned judge on the former trial. As the record is made, that cannot be done without virtually ordering a new trial, and subjecting the parties to serious expense and delay. I therefore adopt all the rulings made on the former trial.

"There are in reality, but two principal subjects of consideration: *First.* Is the plaintiff entitled to maintain this action as a shareholder in the American Asphalt Company?

*Second.* Was it the duty of defendants, Barber, McLain and Langdon, either by agreement or by reason of their relations, as trustees to the American Asphalt Company, upon their acquiring the control of the two De Smedt patents, to transfer them to or hold them for the benefit of the American company?

" 1. The right of action for the matters alleged in the complaint inheres in the American company. The testimony establishes that the officers of that company refused to bring the suit. Thereupon the plaintiff, as a stockholder, was entitled to sue. Although brought in his name as plaintiff, the action is really for the benefit of the corporation, and is to enforce a right of the corporation, and not a private right of the plaintiff. He is personally interested only to the extent that he, as a shareholder, would participate in the benefit of a recovery. The whole theory of stockholders' actions in cases like the one at bar may be stated in a very few words extracted from the opinion of the court in Brinckerhoff *v.* Bostwick, 88 N. Y. 52, which was an action by a stockholder, brought against directors of a bank for negligent and improper conduct in their official relations, whereby the bank suffered damage. A request had been made that the receiver of the bank sue the directors, and he declined. The court said (page 56) : ' The causes of action set forth in the complaint are losses and misapplication of the funds of the bank through the negligence and misconduct of its directors. For these losses the bank, if still exercising its corporate functions, would have a claim upon the guilty directors which it could enforce by action, but if it refused to prosecute, or if it still remained under the control of the very directors against whom the action should be brought, the stockholders would have a standing in a court of equity to sue in their own names, making the corporation a party defendant. Robinson *v.* Smith, 3 Paige, 222, 223 ; Greaves *v.* Gouge, 69 N. Y. 154; Ang. & A. Corp., § 310. See review of

cases in Heath *v.* Railway Co., 8 Blatchf. 347.' The foregoing citation expresses in brief terms the rule as to the right of the stockholders to maintain an action for a wrong perpetrated by directors to the detriment of the company when the officers of the corporation refuse to institute the suit; or where the directors in control of the corporation are the very persons against whom the action is to be brought. The general idea deducible from the rule, is that the stockholder, suing as a substituted plaintiff for the corporation, is merely asserting the corporate rights, and not his own. The cause of action belongs to it, and not to him.

"It is claimed, however, by the defendants, that the plaintiff cannot maintain this action because of certain alleged false statements and representations made by him as the promoter and organizer of the American Company. The matters referred to grow out of the plaintiff's declarations as to his patents for making asphalt pavements, and are connected with the history of the organization of the American Company, the transfer to it of the assets of the Trinidad Company (so-called), and involve an inquiry into the circumstances under which the American Company was organized, and under which Barber, McLain and Langdon were induced to or did become associated with the enterprise of the American Company. It is at this point of the case that I feel embarrassed by a mass of evidence taken at the former trial. Some of that evidence was received by the learned judge before whom the plaintiff's proof was put in (so far as I am able to gather) on the question of the right of the plaintiff to maintain the action at all upon equitable grounds relating to his good faith; and, looking at an opinion written by that learned judge, I should infer from the conclusion at which he arrived, that he deemed it wise to admit the evidence, rather than reject it, and imperil a possible recovery by the plaintiff on the whole merits. When the case came to me, finding such evidence already

in, I allowed the defendant to add to it, and so the question is in the case as to the effect to be given to the alleged statements of the plaintiff (conceding they are established,) made at or before the organization of the American Company, concerning his own patents and his control of the De Smedt patents, and as to other representations referred to in the proof on the record, to which special reference is not now necessary.

"The action against the three individual defendants is to hold them to a responsibility incurred in their capacity as directors of the American Company, to compel them to account for property which, it is claimed, they should have acquired for the benefit of that company, but which, it is alleged, they obtained for their own individual benefit, and have held and used for their own behalf; and it is claimed that they are to be charged, as trustees for the company, with the value of that property, and with such profits as they may have realized from the use and control thereof. Alleged frauds of the plaintiff are urged as an affirmative defence going to the direct right to maintain the suit. It is not claimed that he is estopped to sue as a stockholder by reason of any complicity or connivance in the acts of the individual defendants, nor that he has been guilty of *laches.* If such a claim were made, there is absolutely no foundation for it in the evidence. Such matters, if proved, would have been available to defeat the action, but there is no such proof concerning them as would authorize a finding of fact against the plaintiff. The substantive defense is, that the plaintiff, although suing upon a cause of action belonging to the company, cannot maintain the action, because he, as the promoter of the corporation, did or said certain things which amounted to fraudulent acts or representations, whereby the individual defendants were induced to become shareholders, and have been injured. I think this subject must be considered as a question of law; and, if the conclusion at which I have arrived is correct, it is un-

necessary to make any finding of fact concerning what the plaintiff did or said in connection with the formation of the American Company. If the cause of action belongs to the company, all that the individual defendants could set up by way of defense to it would be such matters as tended to relieve them from responsibility to the corporation. What might have been said or done by persons inducing them to become shareholders, would not relieve them. This may be illustrated by the case of a subscriber sued by the corporation upon his subscription, and who sets up as a defense that the promoters of the company bought property transferred to and for the purposes of the corporation, and from themselves, as vendors, at such exorbitant prices as to amount to a gross fraud. That would not be a defense (Hornaday v. Railroad Co., 9 Ind. 263), and the precise illustration given was in the case of Dorris v. French (4 Hun, 292), in which the promoters, owning patent rights of small value, turned them into the corporation at several hundred per cent in advance of their real value, and the defendant sought to escape liability on his subscription on that ground. A gross fraud had been perpetrated, but it was upon the corporation; and so in this case, if there were any wrong in putting in a patent of but small value, or in otherwise causing the capital stock to be issued in payment of comparatively worthless property, it was, as the proof stands, an injury to the corporation, and not to the individual defendants—I mean so far as this action is concerned only. For such injury as they individually may have sustained, the defendants have their appropriate remedies. As nothing that the plaintiff is alleged to have done as a promoter in organizing the company would be a defense to an action by the company against those who were under contract, or owed a duty to it as a corporation, so it cannot be a defense to a suit brought by a shareholder in behalf of the company ; and for the simple reason that the court will not try, in an action framed as this is, the particular griev-

ances the defendants may have against the plaintiff individually, standing in court, as he does, merely to enforce corporate claims. Their wrong to the corporation cannot be excused and remain without redress, because the plaintiff, at some time, himself may have been guilty of an entirely independent wrong against the corporation or against them. If he really committed frauds upon the corporation or upon the individual defendants, he is responsible, but that cannot be urged as a reason for the corporation not recovering in in this action. A plaintiff must enter a court of equity with clean hands—that means concerning the subject matter of the suit. If the plaintiff had done anything concerning the particular cause of action set forth in this complaint, he might be held estopped even from bringing the suit on behalf of the corporation, but no such estoppel can be raised upon the proof, and immunity for the wrong of the defendants (if there be any wrong) cannot be asked, because they choose to charge the plaintiff with having deceived them and others before the corporation was formed. The issue cannot be changed, and the action of the court diverted from the proper subject of litigation by raising such a contest.

"2. It remains, then, to be considered if, on the whole evidence, the defendants Barber, McLain and Langdon have, as directors or trustees of the American Company, made themselves liable in equity to that company for the two De Smedt patents, and the profits derived from their use. I speak of the reissued patents, or those which are now in contest, and I do not intend to consider the plaintiff's claim as to the value of his patents, and the comparative value of the two De Smedt patents before the reissue. The three defendants named were directors of the American Company.

"It is not necessary to cite authorities to the proposition that, if they were under a duty or obligation of any kind to get the control of the De Smedt patents for the benefit of the American Company, they could not do so for their

individual benefit. The fact is conceded that they did get them, and that they have not transferred them to, nor held them for, nor had them used in any manner to the advantage of, the American Company. This they frankly admit, and in doing so they seek to justify their conduct by circumstances hereinafter to be adverted to. It is claimed by the plaintiff that the defendants Barber, McLain, and Langdon hold the De Smedt patents in trust for the American Company; that they have so held them, since 1881; that they have used them, done work under them and realize large gains therefrom, which should have gone to the American Company; that by agreement of the three defendants named, or some of them, they were to get the control of those patents for the benefit of the company; or that, the company having been organized to work under those patents as well as under Gen. Averill's patents, they were bound on securing them to turn them over to the American Company. As before stated, there can be no doubt that these three defendants did get the control of the De Smedt patents by purchasing a controlling interest in the Anthracite Company for a few dollars, and that they so used and manipulated those patents as to secure the benefit of their use to themselves. I am not satisfied that any specific or express agreement was ever made by either of the three defendants to transfer those patents to the American Company upon obtaining control of them, but these facts are established by uncontradicted testimony. Indeed, all seem to concur in stating it, viz.: that Warren believed the De-Smedt patents were the foundation and security of the whole right to carry on the business of asphalt paving, and every one desired and intended that those patents should belong to and form part of the rights of the American Company; and further than that the evidence shows conclusively that both McLain and Barber believed those patents did virtually belong to the American Company, for they thought

Gen. Averill controlled them, and had put them into that company.

There were nine De Smedt patents in all, and it seems Gen. Averill had but seven of them. When it was ascertained that the two important De Smedt patents were not controlled by Averill, the defendants, or some of them, above named, sought to procure them. It is not all important whether they distinctly contracted to do so or not. They knew they were required by the American Company; that the company was organized to work under them; and they believed those patents to be necessary to the success of that company. Their duty was plain. They were bound to transfer them or hold them for the American Company, of which they were directors. Had the patents not been those under which the American Company was to operate, a different question might be presented; but there can be no doubt that they were required by the company, and that it was supposed by all, when that company was organized, that those very patents were or would become its property. The defendants, upon acquiring them, should have tendered them to the company, and transferred them, on being repaid what they cost; and in not doing so, but holding them for their own profit, they have become liable to the corporation. I have spoken of the three defendants in association without stating the part each took in the transaction, as it is admitted that after the purchase of the Anthracite stock the interests became vested in those three defendants. The only reason assigned for the course pursued by the defendants in retaining these two De Smedt patents, seems to be that stated by McLain, that they wished to protect themselves against Averill, or against loss from their investment in the American Company. But such considerations cannot prevail. Those two patents should have been put into the American Company with the seven other De Smedt patents, and the personal interests of the defendants can no more justify them in retaining this property than if they

had appropriated any other property of the corporation to indemnify themselves against loss from their investment in its stock. I cannot, in this action, appoint a receiver of the American Asphalt Pavement Company, but to make a decree effectual it is necessary that a special receiver should be appointed of the reissued De Smedt patents, and that such patents should be assigned to such special receiver, to hold the same for the benefit of the American Company, and that there also be paid to him such sum as may be awarded as profits against the defendants above referred to, and such receiver act under the orders of the court to be hereafter given.

" Judgment must be entered in accordance with the findings I have made and handed down with this opinion. Mr. George B. Morris will be appointed referee, to take and state the accounts of profits, and Mr. Theron G. Strong will be appointed receiver."

*Wm. W. Niles*, for Amzi L. Barber and others, appellants ; *A. L. Worthington*, for the Barber Asphalt Paving Co., appellant.

*Thomas Ewing*, for respondent.

BARTLETT, J.—The principal questions involved in this appeal are satisfactorily discussed in the elaborate opinion which was rendered in the court below. The proofs warranted the conclusion that the defendants Barber, McLain and Langdon as directors or trustees of the American Asphalt Pavement Company, were liable in equity to account to that corporation for the profits which they derived from the so-called De Smedt patents which they acquired and sought to appropriate to their own use as individuals. The right of the plaintiff as a stockholder of the American Asphalt Pavement Company to enforce the cause of action growing out of the appropriation of these patents depended

4

upon a refusal of the corporation to assert its rights, or upon circumstances showing that any attempt to get it to do so would be ineffectual. The evidence of a serious and determined effort on the part of the plaintiff to induce the company or its officers to take appropriate action in the premises was not so clear or conclusive as could be wished; but we are inclined to think it was sufficient to sustain the prosecution of the suit in his own name. He addressed a letter to Mr. Cyrus M. Warren, as president of the corporation, on April 2, 1883, requesting that legal proceedings should at once be taken against the defendants Barber and McLain, by reason of their misconduct and neglect of duty. To this communication he received a response from Mr. Warren to the effect that he had resigned the presidency of the company two years before. With the exception of the assertion contained in this answer, however, there is nothing in the case to show that Mr. Warren had actually resigned, or that his resignation had been accepted. Furthermore, it appears from the evidence of the defendant Barber, that there never was a meeting of the company of any kind since the meeting in April, 1881, when Mr. Warren was elected president in place of the plaintiff. The testimony of the trustees other than the defendants Barber and McLain indicates that those two gentlemen were most active in its management and practically controlled it; and as this suit is based upon their alleged misconduct, these circumstances put the plaintiff in a position to sue as a stockholder in his own name. Brinckerhoff *v.* Bostwick, 88 N. Y. 52, 60.

As we have intimated, it is preferable in this class of cases for the plaintiff to make clearer proof in the first instance of his inability to secure redress by means of corporate action; but in view of the attitude which the American Asphalt Pavement Company itself has assumed throughout the litigation, and of the fact, which is sufficiently manifest, that its attitude in this suit is friendly in-

stead of hostile to the defendants Barber and McLain, we are unwilling to grant a new trial simply because the court might properly have required the plaintiff to prove more positively than he did that the corporation would not en-force the rights which he seeks to assert herein.

Upon the present appeal a separate brief has been filed in behalf of the Barber Asphalt Paving Company, one of the defendants. The complaint charges that the defendants Barber, McLain and Langdon, having acquired the De Smedt patents in controversy, have in their own names individually and in the name of the Barber Asphalt Paving Company, and in the names of other persons unknown, made and fulfilled contracts for the manufacture and laying of pavements in various cities of the United States. This appears to be the only allegation of fact against the Barber Asphalt Paving Company. The findings of the court are to the effect that the Barber Asphalt Paving Company is a foreign corporation, organized under the laws of West Virginia, of which the defendant, Amzi L. Barber, is the president; that the nominal title to the said De Smedt patents is in the defendant, Barber, in trust for the Barber Asphalt Paving Company; and that it does not appear that the Barber Asphalt Paving Company, as a corporation, has done anything contrary to equity and good conscience, or that such company or its board of directors or trustees has ever had any direct connection whatever with the De Smedt patents, or has in any way approved, ratified, adopted or interfered with the transactions of the defendants, Barber and McLain, in regard to said patents. The judgment based upon these findings directs : First, that the defendant, Barber, not only individually, but as trustee for the Barber Asphalt Paving Company, assign all right, title and interest in and to the said De Smedt patents to a special receiver, who shall hold them in trust for the American Asphalt Pavement Company; and furthermore, that the Barber Asphalt Paving Company, as well as the

defendants, Barber, McLain and Langdon, account and pay over to such receiver all profits made by them or either of them, directly or indirectly, out of the said De Smedt patents.

We are unable to perceive anything in the proof or findings sufficient to sustain the judgment, so far as it relates to the Barber Asphalt Paving Company. It was proper to decree that the defendants Barber, McLain and Langdon should account for and pay over all profits realized by them out of their purchase of the De Smedt patents, which they assumed to acquire for themselves individually when they ought to have acquired them for the American Asphalt Pavement Company; but if these patents, to which they held the legal title, have been transferred to the Barber Asphalt Paving Company without notice of any equity existing in behalf of the American Asphalt Company, there is no principle of law upon which the Barber Asphalt Company can be made to account for profits which it may have realized from the use of the patents. These views lead to the conclusion that the judgment should be reversed so far as it relates to the Barber Asphalt Paving Company.

The notice of appeal attempts to bring up for review a number of intermediate orders granted in the cause at various stages of its progress. Unless separately appealed from, these are only reviewable upon an appeal from a final judgment (Code Civ. Pro., § 1316); and the decree of the court below, now under consideration, is an interlocutory and not a final judgment.

The interlocutory judgment should be affirmed as to all the appellants except the Barber Asphalt Paving Company; and so far as that corporation is concerned, should be reversed, with costs.

VAN BRUNT, Ch. J., and DANIELS, J., concur.

NOTE ON RIGHT OF BENEFICIARY TO BRING AND MAINTAIN SUIT.

It may be laid down as a general rule that the real party in interest, or a person who has an interest, may bring an action to protect or preserve his rights or property, where those whose duty it is to do so have refused, on demand, to take any legal steps to accomplish this result. The most common cases are those where a stockholder is compelled to prosecute an action in behalf of himself and other stockholders, but creditors, legatees, and others are entitled to the same relief under proper circumstances.

*Corporations.*—It is a well settled proposition that when a party having the power and charged with the duty to become a plaintiff and prosecute an action for a private remedy refuses to do so, another, or others, having a financial interest, actual, contingent or remote in the subject of the cause of action and in the relief, may bring an action making such party and the one against whom the relief is sought, parties defendant. The office of the nominal plaintiff in such case is to bring the proper parties before the court that it may be set in motion to adjudicate between them. Overton *v.* Village of Olean, 37 Hun, 47. This method is applicable to cases where the relation of trustee and *cestui que* trust exists, and may be applied to a municipal corporation which refuses to perform a plain duty in which the corporators are interested, and by the non-performance of which they will be prejudiced. Id. In this case, the officers of the village had refused, when requested to do so, to bring an action to restrain a railway company from substantially obstructing and destroying the use of one of the public streets, and the court held that an adjoining property owner might make such village officers and the company parties defendant to an action for such purpose, and so enable the court to give such directions as might be necessary to protect and preserve his right.

Where the shareholders are numerous, the suit may be brought by one or more in behalf of all. Brinkerhoff *v.* Bostwick, 88 N. Y. 52; Butts *v.* Wood, 37 Id. 317; Robinson *v.* Smith, 3 Paige, 222; Hichens *v.* Congreve, 4 Russ. 562; 4 Blatchf. 347.

Where the officers of a corporation have the corporate assets in their possession, the corporation, and not the stockholders therein, is the proper party to bring an action to compel them to account, unless it appears that it is necessary, in order to prevent a complete failure of justice, for the stockholders to bring the action. Byers *v.* Rollins, 21 Pac. Rep. 894. But in such case, the corporation must be made a party defendant. Id.

It was held in Gray *v.* N. Y. & U. S. Co., 3 Hun, 383, that a stockholder in a corporation can, in behalf of himself and other stockholders similarly situated, maintain an action against such corporation and its directors, to set aside and enjoin transactions done by such directors.

in the name of the corporation, for their own personal gain and benefit, and in fraud of the rights of the plaintiffs and other *bona fide* stockholders, when the directors have been requested to bring such action and have refused.

Where a majority of the trustees of a religious corporation are engaged in the commission of a wrongful diversion of its property, a minority of the trustees remaining loyal, though consisting of a single person, may maintain an action against them, in the name of the corporation, to enjoin such mal-administration of property. First Reformed Presbyterian Church v. Bowden, 14 Abb. N. C. 356. And, it seems, that if all the trustees were engaged in the wrong, any private member of the corporation may bring an action for the benefit of himself and the other members, joining the corporation and trustees as defendants. Id.

The stockholders of a national bank may bring an action against the trustees to recover for waste and loss of the corporate assets, caused by their gross negligence, where the bank is still under the control of the accused trustees. In such case, the corporation is necessarily a party defendant, and if a receiver has been appointed, he should also be joined. Hand v. Atlantic National Bank, 55 How. 231.

It was held in Smith v. Rathbun, 66 Barb. 402, that where directors of a banking institution knowingly and in violation of their duty commit fraud upon the interest committed to their charge, or knowingly allow it to be done by one or more of their associates or chosen officers, they become answerable individually to stockholders or other beneficiaries of the fund, on the basis of the fraud. See Cunningham v. Pell, 5 Paige, 607; Carpenter v. Danforth, 52 Barb. 584.

Where a board of directors of a plankroad company audit a bill for extra services rendered by a member of the board who was included to constitute a quorum, and acted with the board, any stockholder may sue for himself and any other stockholder who makes himself a party, to prevent the payment of such bill by the treasurer of the company. Butts v. Wood, *ante.*

Where the stockholders are permitted to bring suit in their own names on the ground that the directors have refused to sue, the corporation must be made a party defendant. Slattery v. Transportation Co., 4 S. W. Rep. 79; Taylor v. Holmes, 8 Sup. Ct. Rep. 1192; Stromeyer v. Combes, 2 N. Y. Supp. 232.

*Demand and refusal.*—In an action by a stockholder to restrain the wrongful acts of the officers of a corporation, he must aver that the corporation has refused to bring the action. Leslie v. Lorrillard, 31 Hun, 305. An allegation that the corporation has neglected to bring such action, is not equivalent to an averment that it has refused so to do. A refusal of the board of directors in such a case is essential in

order to give the stockholder any standing in court. Id. It is not necessary to go so far as the United States supreme court went in Hawes v. Costa Water Company, 21 Am. L. Reg. N. S. 252, where, though the complaint averred that the president and board of directors, on application, wholly declined to take any proceedings whatever in the premises, the demurrer was sustained on the ground substantially that this allegation did not show such a distinct and unqualified refusal as the law required, to vest the right of action in the stockholder. Id.

Where a stockholder brings an action for losses sustained by the misconduct of the officers of a corporation, after request and refusal on the part of the corporation, the complaint must allege that the corporation, on being applied to refuses to prosecute, and is defective and insufficient without such averment. Greaves v. Gouge, 69 N. Y. 154. Such an allegation constitutes an essential element of the cause of action, even though the loss is peculiar to the stockholder, and is caused by the depreciation of the market value of the stock. Id; Smith v. Rathbun, ante.

An action for injuries caused by the fraudulent acts, misapplication or waste of corporate funds and property by an officer of the corporation must be brought in the name of the corporation, unless such corporation or its officers, upon being applied to for such a purpose by a stockholder, refuse to bring such action. In such case, and then only, can a stockholder bring an action for the benefit of himself and others similarly situated. The corporation must necessarily be made a party defendant in such action. Greaves v. Gouge, 69 N. Y. 154; Smith v. Rathburn, 22 Hun, 150.

Unless a corporation, either actually or virtually, refuses to bring suit, the stockholders individually can maintain no suit for equitable relief against the directors and officers for mismanagement and negligence. Doud v. Railway Co., 25 N. W. Rep. 533; Boyd v. Sims, 11 S. W. Rep. 948. An allegation that the stockholders repeatedly protested against the evils complained of, without stating that such protests were made to the directors, is entirely insufficient to authorize them to sue. Boyd v. Sims, ante. The request to the corporation must not be a simulated, but an actual, request, Bacon v. Irvine, 11 Pac. Rep. 646; Dannmeyer v. Coleman, 11 Fed. Rep. 97; and the refusal of the directors to sue must be real, persisted in after earnest efforts to overcome it, and not the result of collusion. City of Detroit v. Dean, 1 Sup. Ct. Rep. 560; Rathbone v. Gas Co., 8 S. E. Rep. 570; Alexander v. Searcy, Id. 630.

To enable a stockholder to maintain an action in his own name to have certain bonds issued by the president, who is also general manager, of a railroad company, declared *ultra vires*, a demand upon, and

refusal by such officer to bring such suit, are sufficient. *City of Chicago v.* Cameron, 11 N. E. Rep. 899.

A stockholder is not excused from applying to the directors to sue before bringing suit himself, from the fact that the treasurer of the corporation, of whose misconduct complaint is made, owns the major portion of the stock. Dunphy *v.* Association, 16 N. E. Rep. 426; Allen *v.* Wilson, 28 Fed. Rep. 677.

A stockholder must show that he has exhausted all means within his reach to obtain redress within the corporation, before he is permitted to maintain an action to set aside a contract made by the directors. Dumpfel *v.* Railway Co., 3 Sup. Ct. Rep. 573; McHenry *v.* Railroad Co., 22 Fed. Rep. 130; Foot *v.* Mining Co., 17 Id. 46; Bill *v.* Telegraph Co., 16 Id. 14; City of Quincy *v.* Steel, 7 Sup. Ct. Rep. 520.

*When excused.*—The stockholder, in an action by him against an insolvent corporation to have his share of the assets given priority over the claim of a creditor, who, he alleges, fraudulently induced him to become a stockholder, need not aver any effort to procure the corporation to begin the action. Poole *v.* Association, 30 Fed. Rep. 513.

A stockholder and bondholder of an insolvent corporation may maintain an action against the corporation, its directors and other persons, to rescind an unlawful contract made by certain of the defendants with the corporation, etc., without first making a demand upon the corporation to bring an action to redress the wrongs complained of, where the corporation is obviously unable to act by reason of being under the control of the very persons who must be the defendants in the proposed action. Currier *v.* N. Y., W. S. & B. R. Co., 35 Hun, 355; Brinckerhoff *v.* Bostwick, 88 N. Y. 56; Gray *v.* N. Y. & V. S. S. Co., *ante.*

Where the board of directors of a corporation is acting in a manner destructive of the rights of the other shareholders, or where the majority of the shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other stockholders and which can only be restrained by the aid of a court of equity, an action to obtain relief may be maintained by a stockholder, without showing an active effort on his part with the body of the corporation affected to induce remedial action on its part, where such effort can be of no avail. Barr *v.* N. Y., L. E. & W. R. R. Co., 96 N. Y. 444, Hawes *v.* Oakland, 14 Otto. 450.

An action against the directors of a national bank to recover for losses of corporate funds, suffered through their gross negligence and inattention to the duties of their trust, should in general be brought in the name of the corporation; but if it refuses to prosecute, the stockholders, who are the real parties in interest, will be permitted to

sue in their own names, making the corporation a defendant. Brinck-erhoff v. Bostwick, 88 N. Y. 52; Greaves v. Gouge, 69 N. Y. 154. And this course of proceeding is also allowed if it appears that the corporation is still under the control of those who must be made the defendants in the suit. Brinckerhoff v. Bostwick, *ante;* Butts v. Wood, 37 N. Y. 317; Robinson v. Smith, 3 Paige, 222. In such cases a demand upon the corporation to bring the suit would be manifestly futile and unnecessary. Id. A national bank, after the appointment of a receiver, cannot sue; and where the receiver is one of the directors chargeable with neglect of duty, he is not a proper person to whom to intrust the conduct of the action, even though he consented to institute it, or the comptroller of the currency should direct him so to do. Id.

The president of a corporation, who is a trustee, may authorize and maintain an action in the name of a corporation without the authority of the board of trustees, and against its express direction, where a majority of its members are engaged in the wrongful diversion of the corporate funds, or other injury to its business, and the neglect to sue or the resolution to discontinue suit or suits already commenced to recover the moneys diverted, or to remedy the wrong and injury committed, are simply acts in furtherance of such breaches of trust. Re-camier Mfg. Co. v. Seymour, N. Y. Com. Pl. 1889. In such a contingency, any trustee not implicated in the wrong may authorize the bringing of the action which the board of trustees should have authorized. Id.

*Administrator, etc.*—Where an administrator, or assignee for the benefit of creditors, are either in collusion with the party who is holding property alleged to have been fraudulently transferred, or where it is actually claimed by such administrator or assignee, or where the trustee unreasonably refuses to sue, the creditors or other persons interested may themselves bring an action for, or reclaim, such property, and make the transferees and the trustee parties to the action. Harvey v. McDonnell, 113 N. Y. 526; Dewey v. Moyer, 72 N. Y. 70; Bate v. Graham, 11 Id. 237; In re Cornell, 110 Id. 351; Ft. Stanwix Bank v. Leggett, 51 N. Y. 552. In such action, it is not necessary that the creditor is a judgment creditor, as he stands in the place of the trustee. Id.

*Creditor.*—A person, who holds bonds of a railway company secured by a mortgage, made to a trustee, can intervene in an action to foreclose such mortgage, and although not a party thereto, move to set aside an order appointing a receiver on the ground of want of jurisdiction in the judge making it, and for an order appointing a receiver. United States Trust Co., v. N. Y., W. S. &. B. R. Co., 6 N. Y. C. P. 90; Gould v. Mortimer, 26 How. 167; 16 Abb. 448; Weetgen v. Vibbard,

Note on Right of Beneficiary to Bring and Maintain Suit.

5 Hun, 265; Brinkerhoff *v.* Bostwick, 88 N.Y. 52; Hawes *v.* Oakland, 104 U. S. 450.

Positive misappropriation of the trust by some of the trustees, with a silent connivance therein by the others, will probably prove sufficient to enable the beneficiaries to maintain an action in equity for their own protection. But where such connivance is not shown, or the innocent trustees have not refused to institute the proper proceedings, the case does not call for their active interposition. Weetgen *v.* Vibbard, 5 Hun, 265; Western R. R. Co. *v.* Nolan, 48 N.Y. 513.

Ordinarily, a creditor of an insolvent estate cannot maintain an action against a fraudulent vendee alone, or against him and the executor or administrator, to set aside the fraudulent transfer, and have the property held under it administered as assets to pay debts; but if the executor or administrator collude with such fraudulent vendee, or after reasonable request refuse to take proceedings to impeach his title, a creditor may maintain an action against him and the executor or administrator for that purpose. Bate *v.* Graham, 11 N. Y. 237.

And where a devastavit has been worked by the personal representatives, a creditor may follow the property, if in existence, and have it impounded for the purpose of administration as assets. Everingham *v.* Vanderbilt, 51 How. 177; Long *v.* Majestie, 1 John. Ch. 305; McDowl *v.* Charles, 6 Id. 132.