# Lagarde *et al. v.* Anniston Lime & Stone Co.

*Bill in Equity to have Trust Declared in Land.*

1. *Corporation; fiduciary relation existing between directors and corporation.*—The directors or other governing members of a corporation, in their dealings respecting corporate interests, are subject to the rules which govern the acts of persons occupying fiduciary relations; and, therefore, it is a breach of their fiduciary obligations for such officers, by acquiring property for themselves, to interfere with the enjoyment by a corporation of beneficial property rights or to prevent the corporation from acquiring property, or in any way impairing the

[Lagarde *et al.* v. Anniston Lime & Stone Co.]

value of the corporation's property rendering it less effectual for the purposes of its corporate creation; and such derelictions will, in equity, be construed as a fraud on the corporation, establishing a constructive trust in its favor.

2. *Same; same.*—Such restrictions upon the directors or other governing officers of a corporation acquiring property are limited generally to property wherein the corporation has an interest or right existing or in which it has an expectancy growing out of an existing right, or to cases where the officers' interference will, in some degree, impair the accomplishment by the corporation of the purposes of its creation.

APPEAL from the City Court of Gadsden, in Equity. Heard before the Hon. JOHN H. DISQUE.

The bill in this case was filed by the Anniston Lime & Stone Company against the appellants. The case made by the averments of the bill are substantially as follows: The complainant is a corporation organized under the laws of Alabama, for the purpose of quarrying limestone, and the manufacture of lime. It had been engaged in this business for a number of years prior to 1896. The complainant had been for some time prior to January, 1896, negotiating for and endeavoring to purchase certain lands and easements upon said lands on which is located a very valuable quarry of limestone. This land is specifically described in the complaint. In 1896 the complainant succeeded in purchasing an undivided 1-3 interest in said lands and easements. The remaining 2-3 interest was owned by Obal Christopher and W. L. Martin, each owning an undivided interest in said lands. The complainant entered into a negotiation with said Christopher to purchase his said lands and easements, and at that time there was a mortgage or other lien, held by the Queen City Bank, on said Christopher's interest, on account of which he could not convey to the complainant a good title to his undivided interest in said lands; but in January, 1896, entered into a contract with the complainant to convey his interest to it as soon as he was able to make good title thereto. The said Christopher also, by a contract, leased his undivided 1-3 interest in the lands to the complainant. W. L. Martin owned the remaining 1-3 interest in said lands and easements, which interest the complainant has negotiated for and endeavored to purchase at various times. The lands lay very near to

other lands owned by the complainant, the chief value of said lands and easements consisting in a limestone quarry situated on the lands, and it was greatly to the complainant's interest to acquire the other 2-3 interest in said lands and easements. In the year 1897, Ernest Lagarde & Sons, composed of Ernest Lagarde, John B. Lagarde and Louis D. Lagarde, became stockholders in the complainant corporation, and John B. Lagarde and L. D. Lagarde were elected and became directors of the complainant. That same year John B. Lagarde was elected president and Louis D. Lagarde was elected secretary and treasurer of the complainant, and continued to hold such position until April 19, 1899; that by reason of their official connection with the complainant they exercised large control and supervision over the complainant's entire business, and in that way became acquainted with all the properties owned by the complainant, together with the lease and contract to purchase as before mentioned, and also ascertained the value of the lands in question to any one engaged in the same business as was the complainant. It was then averred in the bill that John B. Lagarde and Louis D. Lagarde, while holding the office of director and while president and secretary and treasurer of the complainant, and with the complainant's knowledge and consent, some time in the month of March or April, procured J. Blount to purchase for them from Obal Christopher and the Queen City Bank, the interest in the lands and easements owned by said Christopher, taking a deed thereto from said bank and said Christopher to J. A. Blount, for which interest they paid the sum of $1,000; that some time in the same month said John B. and Louis D. Lagarde, without the complainant's knowledge and consent, procured the said Blount to purchase from W. L. Martin the other 1-3 interest in the lands and easements owned by him, taking a deed thereto in the name of John B. Lagarde, for which said interest they paid $800. It was then averred on information and belief that the said John B. Lagarde and Louis D. Lagarde purchased said lands and easements for the purpose of quarrying the limestone from the quarries located thereon, and manufacture the lime therefrom, which lime they proposed to sell in competition with the complainant.

Continuing the bill avers as follows: "That it was by and through said connections the said John B. Lagarde and Louis D. Lagarde had with orator that they learned of the existence of the limestone quarry located on said lands; that during their said connections with orator and before said purchases from Christopher and Martin were made, and by and through said connections, said John B. Lagarde and Louis D. Lagarde became fully aware of the facts that orator had prior thereto become the owner of an undivided one-third interest in said lands and easements; that it had a contract with said Christopher for him to convey his undivided one-third interest to orator; also a lease on his interest in the same, and that it had endeavored to obtain and was still desirous of obtaining the remaining one-third interest from said W. L. Martin; that at the instance of said John B. Lagarde, while acting in said official capacities, the attorney of orator, just prior to the time when said Lagarde procured these purchases, furnished them an abstract of title to said lands, the expense of which the Lagardes charged up to orator, which abstract they pretended to desire as officers of the company." Ernest Lagarde, John B. Lagarde, Louis D. Lagarde, J. A. Blount and Obal Christopher were made parties respondent to the bill.

The prayer was that on final hearing it be decreed that John B. Lagarde and J. A. Blount held the title to the 2-3 undivided interest in the lands and easements described in the bill in trust for complainants, and that upon the payment into court of $1,800, or such an amount as might be determined or ascertained it had been paid for said 2-3 interest in said lands, that the said John B. Lagarde and the said J. A. Blount be decreed to convey to the complainant all paper conveyances of said 2-3 interest held by them, and that each of said parties be decreed to convey the 1-3 interest held by each of them. There was also a prayer for general relief.

To the bill as amended the defendants demurred upon the following grounds: 1. The bill shows no purchase of the lands and easements described in it in trust for complainant. 2. It shows no duty on part of respondents, or either of them, to purchase said lands and easements for complainant. 3. Respondents breached

no duty or trust to complainant in buying the lands for themselves, or in failing to buy them for complainant. 4. The bill as amended shows no trust relation to complainant in respect of the purchase of said lands and easements. 5. It shows no breach of any trust relation to complainant in respect of the purchase of said lands and easements.

On the submission of the cause upon the demurrers, the judge of the city court, sitting as chancellor, rendered a decree overruling them. From this decree the defendants appeal, and assign the rendition thereof as error.

DORTCH & MARTIN, for appellant.—In the averments of the bill there was no fiduciary relation existing between the defendants and the corporation in reference to the property rights involved in the litigation.—*Parier v. Nickleson*, 137 Mass. 487; *Ackeson v. Fair*, 3 D. & W. 524; 3 Pom. Eq. Jur., § § 1088, 1090.

HOOD & MURPHREE, *contra.*—The directors of a corporation occupy a fiduciary relationship to it and its shareholders, and they are in equity held as trustees of the stockholders and the corporation with reference to all its property, interest and projects of the corporation.—3 Thompson on Corporations, § 4009, *et seq;* Morawetz on Corporations, § 243 *et seq;* Cook on Stockholders, § 660 and note; *Cook v. Sherman*, 20 Fed. Rep. 167 and note; *Hodges v. New England Co.*, 53 Am. Dec. 624 and note; *Van Epps v. Van Epps*, 9 Paige 237, and note (Lawyer's ed.) ; *Gardner v. Ogden*, 78 Am. Dec. 192, and note.

Purchases by trustees, or persons occupying fiduciary positions, in contravention of their trust or duty, are held in equity to be made for the benefit of the *cestui que trust* at his election.—*Ten Eyck v. Craig*, 62 N. Y. 419; *Devote v. Fanning*, 2 Johns. Ch. 252; *Rogers v. Rogers*, 1 Hopk. 515; *Hawley v. Cramer*, 4 Cow. 717; *Chapin v. Weed*, Clarke, 464; *Moore v. Moore*, 5 N. Y. 256.

SHARPE, J.—It is well settled that directors and other governing members of a corporation are so far

agents of the corporation that in their dealings respecting corporate interests, they are subject to the rules which apply generally to persons standing in fiduciary relations and which forbid such persons to secure an advantage for themselves which fidelity to the trust reposed in them would carry to others whose interests they ought to represent. It is a breach of their fiduciary obligations which equity will not tolerate for such officers in antagonism to the corporate interest to oust the corporation from beneficial property rights which ought to be preserved to it by acquiring the property for themselves. Derelictions of this kind are treated as a fraud on the corporation out of which equity will raise a constructive trust in its favor—3 Thompson on Corporations, § 4073; 3 Pom. Eq. Jur. § 959; *Blake v. Buffalo Creek R. Co.*, 56 N. Y. 489; *Averill v. Barber*, 6 N. Y. Supp. 255; *Covington, etc. R. Co. v. Bowler*, 9 Bush. 468.

There is a reasonable expectancy attending a lease of land that the tenant holding possession under it will be able to renew the lease at its expiration which expectancy is under some circumstances recognized as a valuable property right, though the tenant may have no way of enforcing renewal. Equity will so regard and treat it as against those occupying fiduciary relations to the tenant in respect to the leased property where they seek to supplant the tenant in the renewal of the lease, and the doctrine applies where a corporation's managing officers so offend against it.—*Robinson v. Jewett*, 116 N. Y. 40; 3 Thompson on Corporations, *supra*.

These principles condemn the purchase by the Lagardes of Christopher's interest in the property here involved. Both by lease and the contract to sell which Christopher had executed to the complainant it had rights in that interest which the Lagardes as officers of the corporation were bound to recognize and respect, but of which they will completely divest it if the transaction is allowed to stand. That purchase by them under the circumstances alleged in the bill was a palpable breach of duty to the corporation and to prevent the consummation of a wrong, the purchase may be held to enure to the complainant's benefit upon its equitably reimbursing the Lagardes on account of what they have expended in the purchase.

A different case is presented in the alleged purchase of Martin's one-third interest. When bought by the Lagardes that property was held by a title distinct from the other tertiary interests held by complainant and Christopher, respectively, and in it the complainant had no property or right. No expectancy of value springs from the alleged fact that complainant "has been negotiating for and endeavoring to purchase" that interest at divers undesignated times. It does not appear that the Lagardes had been authorized to conduct such negotiations, and whether they would ever have been resumed is merely conjectural.

Proprietorship of the Martin property may have been important to the corporation, but it is not shown to be necessary to the continuance of its business, or that the Lagardes' purchase in any way impaired the value of the corporation's property. In such case it is immaterial that knowledge of the situation was gained by the Lagardes through their connection with the corporation, since no breach of duty is traceable to such knowledge. The duty is only co-extensive with the trust so that in general the legal restrictions which rest upon such officers in their acquisitions are generally limited to property wherein the corporation has an interest already existing. or in which it has an expectancy growing out of an existing right, or to cases where the officers' interference will in some degree balk the corporation in effecting the purposes of its creation. An example of the latter class of cases is found in *Blake v. Buffalo Creek R. Co.*, *supra*, where persons who were directors in the railroad company bought rights of way along its projected route; also in *Averill v. Barber*, 6 N. Y. Supp. 255. where persons occupying a like position obtained certain patent rights, to work under which, was the purpose for which the corporation was formed.

Good faith to the corporation does not require of its officers that they steer from their own to the corporation's benefit enterprises or investments which, though capable of profit to the corporation, have in no way become subjects of their trust or duty.

The bill lacks equity so far as it seeks relief concerning the last named property, but is good as to the

Christopher property, and the demurrer having been interposed to it as a whole was properly overruled.

Let the decree appealed from be affirmed.