Cox and Perry, Inc., a corporation, filed this suit against Robert A. Perry, its president, general manager and director; *Page 868 
W.B. Whitfield, a director, and Charles Cummings, Jr., seeking to have a constructive trust imposed upon the profits resulting from certain contracts entered into by the defendants and the federal government. In the alternative, the corporation asked for money damages. The corporation argues that by entering into these contracts, Perry usurped a corporate opportunity or violated his fiduciary duty to the corporation. The trial judge rejected these arguments. We affirm.
The corporation is a closely held organization which was formed in 1965 as a general construction company. Shareholders at the time of incorporation were Robert A. Perry, 10,000 shares; Charles E. Cox, 3,000 shares; Frank A. Mickle, 3,000 shares; Earl Keith Copeland, 5,000 shares; and W.B. Whitfield, 4,000 shares. These shareholders have remained unchanged except for an agreement to transfer Copeland's shares to John Luker, pending the outcome of this suit.
In 1969, the corporation encountered financial difficulty. A number of the construction projects it had undertaken had to be completed by the corporation's bonding company. In 1969, a projection of cash requirements revealed a deficit of $48,000. In the same year, the bonding company notified the corporation that it would no longer issue performance bonds for the corporation's projects. The trial judge found that "other than parttime work by Luker, Copeland, and Perry in attempting completion of a few small non-bonded jobs, Cox and Perry, Inc., was, for all practical purposes, reduced to a listing in the telephone directory."
In August of 1969, hurricane Camille struck parts of the coast of Mississippi, causing extensive damage. John Luker, an employee of the corporation, learned that the federal government was going to supply mobile homes as temporary housing for the victims of Camille. The federal government, acting through the Department of Housing and Urban Development, planned to lease mobile homes for one year and sublease the trailers to the victims. Luker persuaded the corporate shareholders that providing mobile homes to HUD might be a way of getting the corporation out of its financial trouble. The corporation secured a contract to provide 200 mobile homes to HUD for $598,000 with the trailers going back to the corporation after one year.
The corporation made several unsuccessful attempts to acquire financing for the project. It then entered into a joint venture with Madison Industries, Inc., whereby Madison Industries would obtain the mobile homes and financing for the project and the corporation would install the trailers in and around Gulfport, Mississippi. Before Madison, Inc. could obtain financing, the lending institution required the personal guarantee of the shareholders of Madison Industries, Inc. and defendant Perry.
This venture was profitable. The corporation was still in debt at the time of the trial by about $14,000 but this was a big improvement over the corporation's onetime deficit of $70,000. Other than selling the mobile homes as they were released by HUD, the corporation was doing very little business. In 1970, the State Licensing Board for General Contractors denied the corporation's application for a general contractor's license. Defendant Perry testified that from 1969 until 1970, he was winding down the corporation. The shareholders hoped that the profits from the Camille contract would cancel the corporation's indebtedness.
This lawsuit challenges the propriety of conduct taking place in late July and early August of 1970. Defendant Perry and defendant Cummings (the president of Madison Industries, Inc.) learned that a hurricane was expected to strike the Gulf coast of Texas in the Corpus Christi vicinity. They expected HUD to once again be in the market for mobile homes. When hurricane Celia struck on August 3, 1970, *Page 869 
Cummings and Perry, in their individual capacities, submitted bids to furnish mobile homes to HUD. They were awarded contracts to provide 425 trailers. There was no meeting of the corporate officers in which participation in the Celia contracts was discussed.
The corporation explains the theory upon which it seeks recovery in its brief as follows:
 "Although Plaintiff may have been `insolvent' on August 3, 1970, when Hurricane Celia occurred, in the sense that its liabilities may have exceeded its assets by a few thousand dollars, it could probably have obtained and performed contracts of the nature of those obtained by Perry and Cummings in connection with
 `Celia.' If such contracts had been obtained, and if Plaintiff could not have financed their performance in the same general manner financing was obtained for the `Camille' contracts, or otherwise, Plaintiff's interest in the contracts could have been sold by Plaintiff to some other entity, especially in view of the large profits made by the C P-Madison Industries joint venture on the `Camille' contract."
Whitfield and Cummings were joined as defendants on the theory that they conspired with Perry in breaching his fiduciary duty to the corporation. Under this theory, if Perry is not liable, neither are they.
The corporation supports its theory of recovery by arguing that (1) the Celia contracts were a corporate opportunity or (2) Perry should be held liable on principles of agency.
One of the leading cases in the area of corporate opportunity is Lagarde v. Anniston Lime Stone Co., 126 Ala. 496, 28 So. 199
(1900). It is dispositive of the corporate opportunity question raised by this appeal. In Lagarde, the corporation owned a 1/3 interest in a limestone quarry; had a contract to purchase another 1/3 interest, and was negotiating for the last 1/3 interest. The Lagardes were directors and majority stockholders of the corporation. They learned of an opportunity to purchase the 2/3 interest through their connection with the corporation. This court subjected the interest in which the corporation had contractual rights to a constructive trust but found that the Lagardes did not violate their fiduciary duty by purchasing the 1/3 interest for which the corporation had merely been negotiating. In so ruling, the court delineated three restrictions on the business dealing of corporate officers.
 "* * * [T]he legal restrictions which rest upon such officers in their acquisitions are generally limited to property wherein the corporation has an interest already existing, or in which it has an expectancy growing out of an existing right, or to cases where the officers' interference will in some degree balk the corporation in effecting the purposes of its creation." Lagarde at 502, 28 So. at 201.
The corporation in the case at bar fits within none of the criterion set out above. The corporation had no pre-existing interest in the contracts. The corporation had no existing rights in the contracts. The corporation was created to do general construction; this purpose was in no way thwarted when Perry and Cummings secured contracts to provide mobile homes to the federal government. In addition, the corporation's insolvency affected the existence of a corporate opportunity. Consequently, Perry did not usurp a corporate opportunity by securing the Celia contracts for himself.
Regarding the question of agency, the corporation contends that as general manager, Perry had a duty to act for the corporation or at least actively inform the corporation that he was pursuing his individual interests. In rejecting this contention, the trial court found that the master-servant *Page 870 
relationship had terminated because "for all intent and purposes [the corporation was] dead and ready for burial." Assuming arguendo, that, standing alone, the fact of insolvency would not terminate the agency; nevertheless, the trial judge supported his determination that the agency was terminated with the following findings of fact, none of which are plainly and palpably wrong.
The court found that defendant Perry no longer drew a corporate salary from the corporation. He found that Camille contracts were, in fact, not performed by the corporation but through a joint venture in which the corporation provided employees to set up the trailers, with financing by Perry and Madison, Inc. The Court found that Cox and Perry, Inc., couldn't provide profits or income sufficient to perform work in its ordinary course of business, that its bonding company had to take over its job for completion, that its employees had left the corporation, and that it was insolvent. The court noted:
 "It had no existing contracts other than the winding up of Camille that had any prospect of success.
 "It had no city, county, or state license to do business.
 "It was refused a general contractor's license by the State of Alabama."
It appears that the trial court has found that for the corporation to have secured the Celia contract, Perry would have had to give his personal signature. He had no such obligation.
Having found that the Celia contracts were not a corporate opportunity, we conclude that Perry had no duty to inform the other stockholders of his intention to bid on the contracts. As pointed out by this Court in Lagarde, supra, at 502, 28 So. at 202:
 "Good faith to the corporation does not require of its officers that they steer from their own to the corporation's benefit, enterprises, or investments, which, though capable of profit to the corporation, have in no way become subjects of their trust or duty."
For the reasons above-stated, the judgment of the lower court is hereby affirmed.
AFFIRMED.
HEFLIN, C.J., and JONES, SHORES and BEATTY, JJ., concur.