## TALIAFERRO v. The heirs of TALIAFERRO.

1. Where land is purchased by A. with the money of B., a trust results, by ope-
ration of law, in favor of B., although the title be taken by A. in his own
name.   But where a guardian was indebted to his ward, and purchased land
which he declared was for the ward, paid for it with his own money, and put
the ward in possession, but took the title in his own name—*Held*, that there
was no resulting trust to the ward, and that in the absence of proof of an agree-
ment that the land was to be received in payment of the debt, the ward had no
title to it.

Error to the Chancery Court of Montgomery.

The bill was field by the plaintiff in error, for title to a tract of
laud.   It alleges that one Thornton Taliaferro was the guardian
of complainant, and in that capacity, acted for him, for about
nineteen years previous to the fall of 1840, and during all that
time, had the charge and control of his estate.   That about that
time, he purchased for complainant a tract of land, which is de-
scribed, at $7,000, and put him in possession thereof.   That he
purchased the land for him on account of his indebtedness to him
as guardian, and with the understanding with complainant, that
to the extent of the purchase money, it should be a part settle-
ment with him, the guardian being indebted to complainant at the
time, in a much larger amount than the purchase money of the
land.   That he went into possession of the land, with the under-
standing, and upon the terms proposed, the guardian taking the
title in his own name.

The guardian has since departed this life, leaving a widow
and two children.   The prayer of the bill is, that the title be di-
vested out of the heirs, and vested in him, and for general relief.

The heirs deny all knowledge of the alleged purchase, and re-
quire proof, and the widow denies that the facts are as stated in
the bill, either as to the purchase of the land for complainant, or
the alleged indebtedness of her husband as guardian, and claims
dower in the land.   She also demurs to the bill.

Joseph A. Green, a witness for complainant, deposed, that
Thornton Taliaferro took possession of the personal property of

complainant as guardian, in Feb. 1822. At that time, there were nine negroes, of different ages, from thirty down, and when given up to complainant, in 1839, exceeded twenty in number. He thinks six hundred dollars a year, a low estimate for their yearly value, clear of all expenses. As administrator of complainant's father, he paid the guardian five or six hundred dollars, in Nov. 1827. He heard the guardian say, in the fall of 1840, he had purchased a plantation from Stewart for complainant. He cannot say why he bought it for him, but as the guardian had told him previously, he was indebted to complainant, he took it for granted, it was in part payment.

The rearing, education and support of complainant, was paid by his mother, so long as witness resided in Georgia, where the parties then lived, and he left in 1830. The guardian paid for complainant, from 1832 to 1835, about $300.

J. J. Stewart proved that he contracted with Thornton Taliaferro, for the sale of the land described in the bill in the fall of 1840—that he informed witness that he wished to purchase the land for his brother Zachariah—that he wanted to settle him near him, that he might superintend the place. Before he bought the land, he brought Zachariah with him, and they examined it together. Zachariah had previously spoken to witness about it. He put Zachariah in possession, in the fall of 1840. The land has been paid for.

Leonidas Spyker proved, that the deceased was indebted to complainant, but did not know the amount. Heard complainant say, he was willing to take the land, and release his brother's estate from all further claim.

His honor the chancellor, considering that there was no sufficient proof of the agreement to purchase the land for the complainant, and also, that there was no equity in the bill, dismissed it at complainant's costs. The dismissal of the bill is now assigned as error.

WILLIAMS & SAFFOLD, for the complainant.—Although the contract for the land is parol merely, as it has been performed in part, chancery will specifically enforce it. [1 Madd. Ch. 381; Story's Equity, 66–7–8; Sug. on Ven. 105; 9 Paige, 280; 1 Smith's C. P. 491; 1 Swanston, 172.]

ORMOND, J.—The statute of frauds not being pleaded, or relied on in the answer, we are to inqure whether the case made by the bill, is sustained by the proof.

The substance of the bill is, that Thornton Taliaferro acted as the guardian of the complainant, for about eighteen years, having had the slaves of complainant in his possession, and having also received several sums of money on account of complainant, from the administrator of his father. That being indebted to complainant in a large sum of money, he purchased for him a tract of land, and put him in possession, but took the title in his own name. That he purchased the land for complainant, on account of his indebtedness to him as his guardian, and with the understanding with complainant, that the land was to be considered to the extent of the purchase money, a part settlement with complainant. That he was indebted to him at the time, in a much larger amount than the price of the land. The price paid for the land was $7,000, of which sum $4,000 was paid down, and the residue secured by two notes, executed by Thornton Taliaferro.

If this contract can be enforced, it must be on the ground, either that there is a resulting trust in favor of complainant, or that there was an agreement between the parties, that Thornton Taliaferro should convey the land to complainant in payment, in whole or in part, of the claim of the latter upon him.

When land is purchased by one, with the money of another, a trust results to him, who advances the purchase money, though the title be taken in the name of the person, making the purchase, or in the name of a third person. But in this case, it appears from the bill itself, that the land was purchased with the money and credit of Thornton Taliaferro. The fact that he was indebted to complainant at the time, does not change the nature of the payment. As, therefore, it is clear beyond doubt, that the land was not purchased with the money of complainant, we are next to consider, whether it is proved that the land was purchased by Thornton Taliaferro, upon an agreement with complainant, that the latter should receive it in payment to the amount of the consideration paid for it.

We think the proof adduced by the complainant, shows at least *prima facie*, that Thornton Taliaferro was indebted to the complainant, in a larger sum than the amount paid for the land.

It also appears, that Thornton Taliaferro purchased the land for complainant, but it is not shown by the proof, that he was to purchase it for, or convey it to the complainant in discharge in whole, or in part, of his indebtedness to him. The only witness on this part of the case, Joseph A. Green, says, "I cannot say why he bought it (the land) for him; but as Thornton Taliaferro had told me previously, that he was indebted to him, (complainant) I took it for granted, it was in part payment." It is most obvious, that this conjecture of the witness is no proof that there was an agreement that the land should be received by complainant in part payment of his debt. The proof that Thornton Taliaferro purchased the land for complainant, is entirely consistent with the idea that the latter was to pay for it afterwards. At all events, it has no tendency to prove that he was to receive it in payment of the debt due him. Indeed, the fact that Thornton Taliaferro took the title in his own name, without objection from complainant, is, unexplained, conclusive proof that the parties contemplated something further to be done before the complainant was to be invested with the title to the land. That such was expected to be the result of a settlement between the parties, is very probable. But that it was intended that the land, on its purchase by Thornton Taliaferro, should immediately vest in the complainant, and extinguish *pro tanto*, the debt due from the former to the latter, is not only not shown by the proof, but is inconsistent with the facts stated in the bill.

It results from this examination, that we agree with the chancellor in the conclusion he has attained, and his decree dismissing the bill, is therefore affirmed.