## POWELL v. ADLER.

No 7784.—Opinion Filed March 12, 1918.

Rehearing Denied April 23, 1918.

(172 Pac. 55.)

1. **Trusts—Constructive—Purchase of Realty by Agent—Frauds, Statute of.**

Where one assumes to act as the agent of another in the purchase of real estate, and by the terms of a parol agreement between them the agent is to pay for the same with his own money and cause the property to be conveyed to his principal, but in violation of his agreement causes the same to be conveyed to himself and refuses to convey the property to his principal, an action may be maintained in equity to compel him to do so, and the same is not within the statute of frauds.

2. **Specific Performance—Ability to Perform.**

While a court of equity may enforce contracts made by the parties, it cannot make new and different contracts and compel the performance of them. In this case, in view of the fact that the principal is not in a position to comply with the contract made with the agent, that is, to issue to him stock in the company for the property which the agent was to buy for it, a judgment of the court, directing the agent to convey the property to the principal upon the payment of the purchase price to him, cannot be sustained.

(Syllabus by Hooker, C.)

Error from District Court, Murray County; F. B. Swank, Judge.

Suit by Ike Adler, receiver of the United Mining & Milling Company, a corporation, against Isaac E. Powell to establish a trust. Judgment for plaintiff and defendant brings error. Reversed.

Opinion by HOOKER, C. Prior to the fall of 1912 the United Mining & Milling Company, a corporation, was engaged in the operation and development of a mine near Davis, Okla. There were a number of stockholders and directors, and about the time given above, owing to unsuccessful business, it was concluded to close the mill located upon the lease then owned by the company, and about the 1st of January, 1913, the directors convened for the purpose of discussing ways and means whereby the business of the company might be more properly operated. The plaintiff in error was present at that meeting; he being a stockholder and presumed to occupy the position of associate manager of the enterprise. No record of this meeting was kept, but the testimony of those present conclusively establishes: That the plaintiff in error and another made to the directors of the company a proposition that, if they would increase the capital stock of the company from $50,000 to $100 000, and deliver to them the increase, they would pay certain debts of the corporation, erect a mill upon the property leased by it, and in addition thereto would purchase the fee in said property for the corporation. This proposition was accepted by the company, and it was agreed that the plaintiff in error would go to Oklahoma and purchase

said property for the corporation, make provision for the erection of the mill and the adjustment of the indebtedness of the company, and that the corporation would increase its capital stock to $100,000, and deliver to the plaintiff in error and his associates the capital stock agreed upon. That thereupon the plaintiff in error went to Davis, Okla., carrying a letter of instruction from one of the directors present to the cashier of a bank at Davis, Okla., and informed the cashier of said bank that his mission at Davis was to purchase this property for his company. The plaintiff in error acquired an option upon this property in his own name, and in a short time thereafter consummated this deal by taking a deed to the property in his own name instead of the corporation, and refused to convey it to the company, although requested by it so to do. Thereafter a receiver was appointed to take charge of the assets of this company, and said receiver instituted this action in March, 1914, alleging in his petition the facts as outlined above, and tendering to the plaintiff in error the amount of money expended by him, and praying that the company be adjudged the owner of the equitable title, and that the plaintiff in error, as the holder of the legal title, be declared a trustee for said company, and that he be compelled to convey the same to the company. The answer of the plaintiff in error consisted of a general denial.

Upon the trial of this cause the lower court gave a judgment in favor of the defendant in error and against the plaintiff in error, declaring the plaintiff in error a trustee of said property, and directing him to make a conveyance to the company upon the payment of some of the money expended by him in the purchase thereof. From this judgment the defendant has appealed, and has assigned the following reasons why the judgment rendered is erroneous: First, that the contract set out in the plaintiff's petition and established by the evidence was within the statute of frauds; second, that by reason of the failure of the corporation to increase its capital stock, it is impossible for the court to specifically enforce the agreement between the parties by the delivering of certain stock in the company to the plaintiff in error, and that to require the plaintiff in error to accept the amount of the purchase money instead of the stock in the corporation would be the substitution of a new and entirely different contract.

Plaintiff in error asserts that the legal question involved in proposition No. 1 is governed by the fifth subdivision of section 941 of Revised Laws of 1910, which reads:

"Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

And in support thereof, Sugden on Vendors, p. 438, is quoted:

"Where a man merely employs another person by parol, as an agent to buy an estate, who buys it for himself and denies the trust, and no part of the purchase money is paid by the principal, and there is no written agreement, he cannot compel the agent to convey the estate to him, as that would be directly in the teeth of the statute of frauds, even if the agent be afterwards convicted of perjury in denying the trust."

Also Story on Equity, § 1201a, is relied upon, which is as follows:

"But the doctrine is strictly limited to cases where the purchase has been made in the name of one person and the purchase money has been paid by another. For where a man employs another person by parol as an agent to buy an estate for him, and the latter buys it accordingly in his own name, and no part of the purchase money is paid by the principal there, if the agent denies the trust and there is no written agreement or document establishing it, he cannot, by a suit in equity, compel the agent to convey the estate to him; for as has been truly said, that would be decidedly in the teeth of the statute of frauds."

Also Brown on Statute of Frauds (5th Ed.) § 96a, is cited:

"* * * It has been stated to be the law that, where one man employs another by parol as agent to buy an estate for him, and the latter buys it in his own name, with his own money, and denies the agency, the one who employed him cannot, by a suit in equity, compel a conveyance of the estate; for that, it is said, would be decidedly in the teeth of the statute of frauds. The case put is not that of an agreement that one party shall take title in his own name, and pay his own money, and afterward convey to the other, for that is evidently a contract to transfer an interest in land which one of them is afterwards to obtain. * * *"

See, also, Kellum v. Smith, 33 Pa. 158; Taliaferro v. Taliaferro, 6 Ala. 404; Raub v. Smith, 61 Mich. 543, 28 N. W. 676, 1 Am. St. Rep. 619; Robbins v. Kimball, 55 Ark. 414, 18 S. W. 457, 29 Am. St. Rep. 45; Burden v. Sheridan, 36 Iowa, 125, 14 Am. Rep. 505.

The authorities above cited sustain the proposition, in order for a resulting trust to

be established, the consideration must be advanced by a person who claims under such trust, and that no resulting trust can be created where the purchase money is advanced and the title taken in the party advancing the money.

It is admitted that the plaintiff in error used his own money in making the purchase of this property. Now, is this case within the statute of frauds? We think not. Under the evidence here a duty was delegated by the corporation to Powell which he was to exercise for the betterment of the company. This duty involved the exercise of good faith, trust and confidence. His mission was to purchase this property for the company in order that it might own the fee to the property upon which it then had a lease; he betrayed this trust and violated the confidence that the directors of the company had reposed in him when he was sent upon this mission. Clark & Skyles on the Law of Agency, vol. 1, p. 907, says:

"It is well settled that an agent occupies a fiduciary relation towards his principal, and that he is bound, in the execution of the agency, to act in the most perfect good faith and with loyalty to the interests of his principal; and so sedulously is this principal guarded that all departures from it are esteemed frauds upon the confidence bestowed. * * *"

And at page 909 thereof it is said:

"Good faith and loyalty to a principal's interest requires of an agent that he shall not take advantage of his position, and the confidence reposed in him, to deal with the principal's property, during the course of his agency, so as to make a profit out of it himself, beyond his lawful compensation. All profits accruing from the subject-matter of agency properly belong to the principal, and it is a fraud upon the latter for the agent to deal with or use the property so as to take these profits, or a part thereof, to himself. * * *"

And at page 919 thereof, it is said:

"It is also a well-settled rule that if an agent undertakes to purchase property for his principal, he cannot be permitted to deal in the matter of that agency for his own benefit and upon his own account; and if he purchased such property for himself, and takes a conveyance thereto in his own name, without his principal's knowledge or consent, he will be considered in equity, although he makes such purchase with his own money, as holding it in trust for his principal, and he ordered to convey it to the principal, upon a proceeding in equity for that purpose, accompanied by a repayment or tender of the amount of purchase money. * * *"

And at page 922 thereof it is said:

"There is some conflict in the cases, however, as to the effect of the statute of frauds; where an agent authorized to purchase land purchases it in his own name and takes title to himself. In some cases it is held that a trust in favor of the principal will not arise, unless the agreement between the principal and agent is in writing, or unless the consideration, or some definite part of it, which was paid for the land, is furnished by the principal at the time of the purchase, and a subsequent payment will not suffice. Or, in other words, if the agreement between the parties is not in writing or no part of the purchase money is furnished by the principal at the time of the purchase, and the agent purchases the property in his own name, the principal cannot compel the agent to convey the property to him, by showing by parol that the purchase was made for his benefit or on his account. Some of these cases base their decisions more on the ground that a resulting trust does not arise in such cases, and hence it cannot be enforced. * * * But, the better opinion seems to be that the statute of frauds cannot be invoked as a defense by the agent, in such cases, for the reason that a court of equity will not permit the statute of frauds to be used as an instrument of fraud, and for the further reason that when a person, through the influence of confidential relation acquires property, obtains an advantage which he cannot conscientiously retain, the court, to prevent the use of confidence, will grant relief."

See authorities cited at note 200, on page 924.

Mechem on Agency (2d Ed.) p. 869, lays down the rule as follows:

"An agent, instructed to purchase property for his principal and relied upon to buy in the principal's name and for his direct account, will not be permitted, without his principal's knowledge and consent, to become the purchaser of the same property for himself. If the property be land and is purchased with the principal's money, the agent will clearly be a trustee; and, even though he purchased with his own money, he will nevertheless be considered as holding the property in trust for his principal, and the latter, upon repaying or tendering him the amount of the purchase price and his reasonable compensation, may, by prior proceeding in equity, compel a conveyance to himself. * * *"

In Rose v. Hayden, 35 Kan. 106. 10 Pac. 554. 57 Am. Rep. 145, it is said:

"In this state, the action of ejectment is an equitable remedy as well as a legal remedy, and in such action the party holding the paramount title, whether legal or equitable, or both, or partly one and partly the other, may recover. The only question, then, for us to consider in this case is, Which has the paramount title to the property in controversy, the plaintiff, or the defendant? That

the defendant with his partner was the agent of the plaintiff to carry on negotiations for the purchase of the lots in controversy for the plaintiff there can be no question, and but little question as to the nature and character of the agency. The defendant, with his partner, was simply to carry on negotiations for the purchase of the lots, under the directions and instructions of the plaintiff and for the plaintiff. Under such circumstances, could the defendant purchase the property for himself, in his own name and with his own money, and take the title to himself, without becoming a trustee for the plaintiff, at the option of the plaintiff, and holding the legal title to the property merely in trust for the plaintiff, and until the plaintiff should repay him the amount which he had expended in the purchase of the property and reasonable compensation for his services? Except for the statute of frauds, which we shall hereafter consider, we think he could not." See cases cited page 109.

"But can the statute of frauds make any difference? Under the authorities cited by the defendant, plaintiff in error, he claims that it not only can but does. Under such authorities he claims that the plaintiff has no remedy and is not entitled to any relief. The following are the principal authorities cited by the defendant."

See authorities cited page 109.

"Under the authorities cited by the plaintiff, it is claimed that the statute of frauds makes no difference. It is claimed that with or without the statute of frauds a trust resulted by operation of law in favor of the plaintiff, and that the defendant simply holds the legal title to the property in trust for the plaintiff. The principal authorities cited by the plaintiff in addition to those which we have already cited for him are the following: Chastain v. Smith, 30 Ga. 96; Cameron v. Lewis, 56 Miss. 76; * * * Sandford v. Norris, 4 Abb. (N. Y.) App. Dec. 144; * * *" and other cases cited on page 110.

"The plaintiff in the present case does not claim to have any interest in the real estate in controversy, except such as arises by operation of law. He does not claim any interest in the real estate in controversy by virtue of the express terms of any contract, written or oral. There was no contract, written or oral, that purported to transfer the property, or any interest therein, to the plaintiff. Nor did the plaintiff employ the defendant to take or hold the title to the property, either for the plaintiff or for the defendant, nor with or without the defendant's own money. He simply employed the defendant by a simple parol contract to negotiate for the purchase of the real estate for the plaintiff, and of course the plaintiff expected to pay for it himself. * * * and to take such title by a formal and valid written instrument, and when the defendant

took the title in the defendant's own name, instead of following the terms of the contract between himself and the plaintiff, he violated the terms of his contract, and abused the confidence reposed in him by the plaintiff. Under the contract as it was actually made —and it was a parol contract which did not in terms give the property to the plaintiff—and under the facts and circumstances connected with the contract, and with the parties to the contract, before and afterward, and with the property in dispute, all that the plaintiff claims is merely that which results to him through the operation of law. We think it is clear that section 5 of the statute of frauds cannot apply to this case. * * *

"The principal defect, as we think, in the reasoning of the defendant is in his not making any distinction between trusts or interests in real estate which are expressly created by the terms of the parol contract itself and trusts or interests which arise from facts and circumstances which sometimes include a parol contract, but which arise from such facts and circumstances only by implication or operation of law; and the authorities which he cites are, so far as they are applicable to this case, and so far as they maintain the doctrine which he urges, alike defective, and, indeed, we do not think that they truly state the law. The defendant and his authorities also make the mistake of supposing that the statute of frauds may be used as an instrument of fraud. Such was not the intention of the Legislature. The intention of the Legislature in enacting the statute was to prevent fraud, and the statute should be enforced in its spirit and not merely as to its letter. * * *

"In 1844, Mr. Story, as judge of the United State Circuit Court for the First Circuit, and in the case of Jenkins v. Eldridge 3 Story, 289, 290 (Fed. Cas. No. 7,266) uses the following language. It appears to me that here a confidential relation of principal and agent did exist; and that, being once shown, it disables the party from insisting upon the objection that the trust is void, as being by parol. The very confidential relation of principal and agent has been treated, as for this purpose, a case sui generis. It is deemed a fraud for an agent to avail himself of his confidential relation to drive a bargain, or create an interest adverse to that of his principal in the transaction; and that fraud creates a trust, even when the agency itself may be, nay, must be, proved only by parol. Bartlett v. Pickersgill, 1 Eden, 515, s. c. 1 Cox, 15, 4 East, 577n, and Leman v. Whitley, 4 Russ. 423, are, I admit, against this doctrine—not wholly, but to a limited extent; for the latter case excludes a case of fraud. But then Lees v. Nuttall, 1 Russ. & Mylne, 53, expressly decides that if an agent, employed to purchase an estate, purchase for himself and on his account, he becomes a trustee for the principal. In that case the whole agency and trust was made out by

parol, and the purchase was from a third person. Carter v. Palmer, 11 Bligh, 397, 418, 419, goes the full length of the same proposition.'

"Also, Mr. Browne, in his work on Frauds, § 96, uses the following language: 'It seems to have been held that where, in a case of trust arising upon an agency, the defendant's answer denied the fact of agency, parol evidence was inadmissible to prove it; but the latter English cases favor a contrary doctrine.' See, also, Browne on Frauds, § 84. * * *

"It seems to be admitted by the defendant, and also by the authorities which he cites, that where the principal advances the purchase money to the agent, and the agent then purchases the property in his own name and for himself, a trust would result in favor of the principal, and the agent would hold the property merely in trust for the principal. But the defendant claims, and the authorities cited by him seem to sustain him, that as the plaintiff in this case did not advance any of the purchase money, and that as the defendant purchased the property with his own money, no such resulting trust has arisen or could arise. Of course where the purchase money is advanced by the principal to the agent, and the agent then purchases the property with the principal's money, and in his own name, it makes out a stronger case of resulting trust than where the agent himself advances the purchase money; but the fact that the principal advances the purchase money cannot be the controlling fact in the case. Many authorities hold that where the agent furnishes the purchase money with the consent of the principal, it will be considered as a loan, and the agent will hold the property purchased in trust for his principal, and as a security to himself for the money advanced by him, Kendall v. Mann. (11 Allen) 93 Mass. 15; Sandfoss v. Jones, 35 Cal. 481; Soggins v. Heard, 31 Miss. 426. * * * This outstanding adverse title may be very good or very bad; but whether good or bad, the doctrine cannot at all be tolerated that the agent may, in violation of his duties as agent, purchase for himself the outstanding adverse title, and hold the same adversely to his principal, merely because his principal has not advanced the purchase money, when, in fact, at the time of the employment of the agent the amount of the purchase money could not be at all known. The question of the advancement of purchase money in such a case should not have much weight. * * * The controlling question in this case is not whether the principal advanced the purchase money or not, but it is whether in equity and good conscience the agent who in fact purchased the property with his own money in his own name, in violation of his agreement with his principal and in abuse of the confidence reposed in him by his principal, can be allowed to retain the fruits of his perfidy.

The weight of authority is, we think, that he cannot." See authorities cited at page 119.

This court in the case of McCaleb v. McKinley, 53 Okla. 388, 156 Pac. 1166, which was a suit brought for the purpose of having a trust declared in a certain real estate transaction wherein the plaintiff and one Moss entered into an agreement with Cloud, the owner of the land, to purchase the same at a stipulated price, and, not being able to finance it, they entered into an oral agreement with McKinley, whereby he agreed that if the plaintiff and Moss would place the legal title to said real estate in him as trustee, he would advance the purchase money, less a certain amount theretofore paid by the plaintiff, and, upon being reimbursed, would execute deeds to them according to their interest, and upon his failure to comply with his agreement, instituted an action to have him declared trustee. A demurrer was filed to the petition and was sustained, and upon an appeal here this court said:

"It seems reasonably clear to us, from the authorities cited by counsel for plaintiff in error, that the demurrer to the petition ought to have been overruled, * * * Rose v. Hayden, 35 Kan. 106, 10 Pac. 554 (57 Am. Rep. 145); * * * Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859 (Ann. Cas. 1916D, 1191); Thompson v. McKee, 43 Okla. 243, 142 Pac. 755 (L. R. A. 1915A, 521); * * * Franklin v. Colley, 10 Kan. 261; Weekly v. Ellis, 30 Kan. 507 (2 Pac. 96), * * *"

In Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859, Ann. Cas. 1916D, 1191, it is held:

"Where a party obtains the legal title to property, not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain it against the rightful owner, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

That sought here is to enforce a constructive trust, as appears plainly from the allegations of the petition. What a constructive trust is, is clearly stated in 1 Pomeroy's Eq. Juris. § 155, as follows:

"Trusts Arising by Operation of Law.— The second great division of trusts, and the one which in this country especially affords the widest field for the jurisdiction of equity in granting its special remedies so superior to mere recoveries of damages, embraces those which arise by operation of law from the deeds, wills, contracts, act, or conduct of parties, without any express intention,

and often without any intention, but always without any words of declaration or creation. They are of two species, 'resulting' and 'constructive', which latter are sometimes called trusts ex maleficio; and both these species are properly described by the generic term 'implied trust'. Resulting trusts arise where the legal estate is disposed of or acquired, not fraudulently or in violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition, or form of the accompanying facts and circumstances, that the beneficial interest is not to be given with the legal title. In such a case a trust 'results' in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner. Constructive trusts are raised by equity for the purpose of working out rights and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates 'fraud', either actual or constructive, including acts of omission in violation of fiduciary obligations. If one obtains the legal title to property, not only by fraud or by violation of confidence or fiduciary relation, but in any other inconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

It is clear, from what is said in the foregoing authorities, that Powell in purchasing the property for himself, which he had undertaken to purchase for the corporation, committed a breach of his fiduciary relation, and acted in violation of confidence imposed in him by it through its board of directors. O'Neill v. Otero, 15 N. M. 707, 113 Pac. 614, holding:

"2. One who takes advantage of his position as agent and representative of another, and thereby fraudulently obtains title to certain mining claims which in equity and good conscience belong to his principal, will be charged in equity as a trustee ex maleficio of his principal."

And it matters not whether the fiduciary relation be that of agent of the corporation, or of directors or other officers of the corporation, who are agents, as it can but act through agents; if the trust is betrayed to gain a private advantage, equity will declare a constructive trust, for the question is not what position the one guilty of bad faith held. or by what name it was called, but did he violate his fiduciary relation to

the corporation, and its confidence imposed in him? If he did, a constructive trust is declared in favor of the one whose confidence is violated. This is illustrated by the following: Averell v. Barber, 53 Hun, 636, 6 N. Y. Supp. 255; Blake v. Railway Co., 56 N. Y. 485; De Bardeleben v. Bessemer Land & Improvement Co., 140 Ala. 621, 37 South. 511; Wasatch Mining Co. v. Jennings, 5 Utah, 385, 16 Pac. 399; Badger Oil & Gas Co. v. Preston, 49 Okla. 270, 152 Pac. 383; 3 Clark & Marshall, Private Corp. p. 2294.

As we have seen, this is a constructive trust and it is well settled in this jurisdiction that such trusts are not within the statute of frauds. McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913C, 146; Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811.

Section 7267, Comp. Laws of 1909, now section 6659 of Revised Laws of 1910, recognizes that trusts in relation to real estate may be created by operation of law. This action is one to declare a trust arising by operation of law on account of facts and circumstances stated above.

If the company or the defendant in error, as the representative of the company, was in a position to comply with its contract and issue to the plaintiff in error the stock contemplated by the agreement between the parties, there can be no doubt as to his right to compel a conveyance of this property to the company, but under the admitted facts this company is not now in operation, and it is no longer in a position to issue stock or to comply with the agreement made by Powell and his associates with it. This court cannot make contracts between litigants—it may enforce the contracts as they are made, but the power to compel the parties to perform contracts which they never entered into may well be doubted. The contract between these parties contemplated that Powell was to buy this property, pay for the same with his own money, which he did, and he was also to erect a mill and pay certain debts of the company, for all of which he was to receive a certain amount of stock to be issued to him by the company, and no part thereof has ever been issued or delivered, nor any offer made so to do, nor is it now in a position to comply therewith. But the court in the decree here did not attempt to enforce this contract, but rendered a judgment, directing the payment of the money in consideration of the property which he ordered conveyed to the receiver. This it could not do.

The judgment of the lower court is therefore reversed.

By the Court: It is so ordered.