2016 OK CIV APP 70

**OSAGE ENERGY RESOURCES, LLC, Plaintiff/Appellee,**

v.

**PEMCO, LLC, and Richard Coody, Defendants/Appellants.**

**Case No. 111,561**

THIS OPINION HAS BEEN RELEASED FOR PUBLICATION BY ORDER OF THE COURT OF CIVIL APPEALS, Division No. 4

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 09/09/2016

Mandate Issued: 11/10/2016

Rehearing Denied October 13, 2016

Rick D. Tucker, BREWER, WORTEN, ROBINETT, Bartlesville, Oklahoma, for Plaintiff/Appellee

Gentner F. Drummond, Donald A. Lepp, DRUMMOND LAW, PLLC, Tulsa, Oklahoma, for Defendants/Appellants

OPINION BY JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Defendants Pemco, LLC, and Richard Coody appeal from the trial court's orders (1) granting judgment in favor of Plaintiff Osage Energy Resources, LLC, (2) denying Defendants' motion for new trial, and (3) granting Plaintiff's application for attorney fees, costs and interest. After review of the record and applicable law, we affirm.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶2 Plaintiff purchased an oil and gas operation in Osage County from David Roark on July 26, 2007. According to the petition, Defendant Coody, "acting as chief operating officer of [Plaintiff], negotiated the purchase of oil leases and a pump yard, including a shop, 10 oil pumping units, 14 down-hole pumps, and various other personal property from David and Annabelle Roark." The peti-

tion states, "The real property containing the pump yard is legally described in the General Warranty Deed." The petition further states, "The agreed purchase price for the oil leases, pump yard, and personal property was $1,400,000." Plaintiff and Roark had no written agreement governing the sale between them.

¶3 It is undisputed that before the sale, Coody and "non-party Gerold Allen, as representatives of Defendant, Pemco, LLC, had been marketing the leases for several years on behalf of [Roark]." Two days before the sale, Coody drove Leon Emanuel and his father (the potential buyers) from Wichita Falls to Oklahoma City, assisted them at the Secretary of State's office in forming Osage Energy Resources, LLC, and accepted employment with the new company. A few days after the sale, Roark paid Coody a $200,000 commission for the sale to Plaintiff. Coody did not inform Plaintiff about this commission.

¶4 On August 20, 2007, Roark deeded the pump yard to Defendant Pemco, a company owned by Coody. Defendants claim Roark deeded Pemco the pump yard "in appreciation for locating a buyer for his leases." Plaintiff responds that Roark testified "he deeded the pump yard to Pemco in reliance upon [Coody's] representation to him that [Plaintiff] owed [Coody] money and therefore wanted the pump yard deeded to Pemco." Roark was paid no consideration for the conveyance. Plaintiff had no knowledge of the commission or the pump yard conveyance until a dinner in May or June 2008 when it learned from "Roark that Defendant Pemco had received a commission from [Roark] from the sale of the leases and that [Roark] had deeded the pump yard to Defendant, Pemco."

¶5 When Plaintiff confronted Coody at the end of June 2008 about the commission and the pump yard, Coody denied receiving the $200,000 and said the pump yard was a completely different transaction from the Roark sale. After further investigation, Plaintiff concluded that Coody had been paid the commission contrary to their employment

---

1. Plaintiff's motion for oral argument is denied.

agreement and that Roark had sold Plaintiff everything associated with his oil and gas operation, including the pump yard, to which Coody had no claim. Coody's employment with Plaintiff as chief operating officer (COO) was terminated in late June or early July 2008.

¶ 6 On November 3, 2010, Plaintiff filed the present action against Defendants alleging fraud, breach of fiduciary duty, imposition of a constructive trust and imposition of a vendee's lien. In the pretrial order, Plaintiff lists the following theories of recovery: fraud, deceit, breach of fiduciary duty, constructive trust, and vendee's lien. Defendants denied Plaintiff's claims and asserted the statute of limitations as a theory of defense.

¶ 7 In October and November 2011, the parties tried the case to the court in a bench trial. The trial court issued two orders on October 24, 2012—one identified as "Findings of Fact and Conclusions of Law" and the other as a "Journal Entry of Judgment." Finding in favor of Plaintiff, the trial court in its journal entry of judgment held in part:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff ... is hereby awarded judgment in its favor and against the Defendants jointly and severally in the principal amount of $200,000.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff ... is hereby awarded judgment in its favor and against the Defendants and each of them, imposing a constructive trust upon the $200,000 received as a commission, Pump Yard, Equipment, and any funds resulting from the sale of same. Defendants are ordered to deliver possession of said cash and personal property to Plaintiff and deliver a deed and bill of sale conveying unencumbered title to the Pump Yard and Equipment to Plaintiff.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that Plaintiff ... is hereby awarded judgment in its favor and against the Defendant, PEMCO, LLC, imposing a vendee[']s lien in the amount of $100,000 upon the Pump Yard. An order of sale in execution

will be issued by [the] Court upon application of Plaintiff.

On November 5, 2012, Defendants filed a motion for new trial which the trial court denied.

¶ 8 On November 21, 2012, Plaintiff filed an application for attorney fees, costs, and prejudgment interest. The trial court granted Plaintiff attorney fees in the amount of $5,441.25 and costs in the amount of $856.50. The trial court further granted Plaintiff "prejudgment interest at the rate of 6% per annum ... as to all items requested by Plaintiff except for the asset designated by both sides as the 'pipe yard' or 'pump yard'. The court specifically finds the commission of $200,000 was a sum certain which is subject to prejudgment interest." (Emphasis omitted.)

¶ 9 Defendants appeal from these orders.

## STANDARD OF REVIEW

¶ 10 "The credibility of the various witnesses and weight and value to be given to their testimony is for the jury or for the trial court on waiver of a jury, and conclusions there reached will not be disturbed on appeal, unless appearing clearly to be based upon caprice or to be without foundation." *Hinds v. Johnston*, 2009 OK CIV APP 54, ¶ 5, 211 P.3d 236 (quoting *Livingston v. Bonham*, 1957 OK 52, ¶ 13, 308 P.2d 657).

¶ 11 "Limitations issues, as mixed questions of fact and law, are reviewable by this Court as questions of law." *Taylor v. City of Oklahoma City*, 1989 OK 129, ¶ 7, 782 P.2d 1363. Questions of law are subject to our *de novo* review in which we exercise "plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings." *K & H Well Serv., Inc. v. Tcina, Inc.*, 2002 OK 62, ¶ 9, 51 P.3d 1219.

¶ 12 "We review a trial court's order denying a motion for new trial for error of a pure question of law or for an abuse of discretion which is arbitrary, clearly against the evidence, and manifestly unreasonable." *Garnett v. Government Emps. Ins. Co.*, 2008 OK 43, ¶ 29, 186 P.3d 935.

¶ 13 The question of a party's entitlement to attorney fees pursuant to a statute is a question of law, which we review *de novo. Calyx Energy, LLC v. Hall*, 2015 OK CIV APP 1, ¶ 3, 342 P.3d 1007; *see also Finnell v. Jebco Seismic*, 2003 OK 35, ¶ 7, 67 P.3d 339. "The amount to be awarded as a fee for the services of a legal practitioner is a matter left to the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Finnell*, 2003 OK 35, ¶ 8, 67 P.3d 339.

## ANALYSIS

### I.   Breach of Fiduciary Duty

¶ 14 Defendants first argue the trial court erred in disregarding their statute of limitations defense and in denying their motion for new trial based on the court's refusal to dismiss Plaintiff's untimely filed claims—*i.e.*, fraud/deceit and breach of fiduciary duty which Defendants argue are governed by the two-year statute of limitations recited in 12 O.S. § 95(A)(3).

¶ 15 Plaintiff responds that Defendants "failed to plead [the] statute of limitations in their Answer as an affirmative defense" and that to allow this defense to be raised for the first time in the pretrial order "after the close of discovery, would result in undue delay and would prejudice Plaintiff[ ]." Plaintiff contends "[b]ecause [it] was unable to conduct additional discovery, it is prejudiced by the application of a limitations defense. Had [the] statute of limitations been pled as an affirmative defense, [Plaintiff] would have sought evidence of concealment by [Coody], which is grounds for suspending the running of limitation periods."

¶ 16 Defendants counter that the pretrial order supersedes the pleadings. Rule 5 of the Rules for District Courts of Oklahoma provides: "The contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice." Okla. Dist. Ct. R. 5(I), 12 O.S. Supp. 2015, ch. 2, app. And, "[w]here the pretrial conference order has superseded the pleadings, it is sufficient to amend the order

and the pleadings shall not be amended." 12 O.S.2011 § 2015(B). Defendants argue that "fraudulent concealment has no application here where it is undisputed that [Plaintiff] was aware of the commission and deed of the pumpyard more than two and a half years prior to filing suit. Coody's denial has no relevance as [Plaintiff] knew that they had suffered injury at that time."

¶ 17 We find no error in the trial court's consideration of Defendants' statute of limitations defense which was raised in the pretrial order and objected to by Plaintiff. Leon Emanuel, a corporate representative of Plaintiff, testified in his September 2011 deposition that Roark told him in April or May of 2008 of the payment of the commission and the conveyance of the pump yard to Pemco. It does not constitute surprise or prejudice that shortly after the deposition Defendants raised limitations as a defense.

¶ 18 Plaintiff claims Coody, while working as Plaintiff's COO, breached his fiduciary duty to Plaintiff by taking the $200,000 commission after agreeing not to take any and by persuading Roark to convey the pump yard property to Coody's company, Pemco, when it actually belonged to Plaintiff as part of the assets sold to Plaintiff by Roark for $1,400,000.

¶ 19 Citing *Resolution Trust Corp. v. Greer*, 1995 OK 126, n. 9, 911 P.2d 257, Defendants agree, "It is well-settled under Oklahoma law that a corporation is owed a fiduciary duty from its officers [and] directors." Defendants contend that the weight of the evidence is on the side of finding Coody was simply a consultant, not an officer of the company. They further maintain that finding a breach of fiduciary duty is contrary to the evidence because Coody was not an officer.

¶ 20 Although denied by Coody, who asserted that he was only a consultant for the company, there is ample evidence in the record, both testimonial and documentary, that he was hired as Plaintiff's COO, represented to others that he was the COO, and acted as such.[2]

---

2.   The colloquy in the trial transcript, Tr., vol. 1, p. 48, ll. 3–24, is such an example.

¶ 21 Regarding the terms of Coody's employment, Leon Emanuel testified on behalf of Plaintiff that during the drive with Coody to Oklahoma City on July 24, 2007, they discussed business. Emanuel testified to the following:

Q. What business was discussed?

A. Well, in order for us to invest in the oil and gas business, we had a couple of conditions with Coody. One is that he be a full-time employee, because, obviously, we had absolutely no idea about oil and gas. In fact, we didn't even know what a pump jack was. The second thing was that there should be no commissions involved, because that's the only way we can know that we're getting a property at a good price. And Coody agreed to both those conditions.

. . . .

Q. And what did Mr. Coody tell you during this trip that he was prepared to do for you and your father?

A. He said he would set up us in business and he would be—he would run the whole show for us and help grow the oil company.[3]

Later, in response to counsel's question, "So was it important to you to know whether [Coody] was receiving a commission?" Emanuel answered, "Extremely important."[4] In his trial testimony, Coody denied any such discussions with the Emanuels during the car trip to Oklahoma City.[5]

¶ 22 Emanuel told the court that they decided to buy the Roark properties only after Coody agreed to work for Plaintiff. According to Emanuel, Coody had authority to negotiate with Roark on behalf of Plaintiff and Coody "did all the negotiations for [Plaintiff]" on the Roark purchase. It is undisputed that Plaintiff did not know about the commission until nine or ten months after the sale when it was disclosed at a dinner with Roark in May or June 2008. When Plaintiff initially confronted Coody about the commission, Coody denied receiving it.

¶ 23 In addition to the commission, Plaintiff claims Coody, while working as Plaintiff's COO, breached his fiduciary duty to Plaintiff by persuading Roark to convey the pump yard to Coody's company, Pemco, when it actually belonged to Plaintiff as part of the assets Roark sold to Plaintiff for $1,400,000. It is undisputed that on August 20, 2007, Roark deeded the pump yard property to Pemco, a company owned entirely by Coody. Roark testified to the following at trial:

Q. And did you—since there wasn't anything in writing, did you tell the Emanuels what all they were getting? Did you go over what your operation consisted of?

A. I don't recall that we did. I think they thought everybody was honest, giving them a fair deal. I don't know.

Q. So you were just selling your operation, and the understanding was that they get whatever comes with that operation?

A. That's right.

Q. Let's talk about the pump yard which is at issue in this lawsuit. At that time that you had that agreement with Osage Energy, did you consider that pump yard to be part of the operation that you were selling to them?

A. That included everything. Anything that pertained to the operation, I forfeited. I'm through.[6]

. . . .

Q. And earlier you testified that the pump yard was included in the deal you made with Osage Energy Resources. So why did you sign the deed conveying the title to Coody's company?

A. When the deal was over, we still had the pump yard and the shop. And I knew there had to be a deed made to someone. So I asked Coody, I said, *Who do I make this deed out to?* And he said, *Make it out to PEMCO.* Said, *They owe me.* He was indicating [t]he Emanuels owed him.

Q. Did he say why they owed him?

A. No. He said, *They owe me.* Said, *Okay.* I thought he was an honest man.

---

**3.** Tr., vol. 1, p. 32, ll. 11–19 and p. 33, ll. 1–5.

**4.** Tr., vol. 1, p. 37, ll. 10–14.

**5.** Tr., vol. 1, p. 157, ll. 17–18.

**6.** Tr., vol. 1, p. 83, ll. 3–18.

Q. And so when you signed over the deed, were you relying upon what Mr. Coody told you?

A. Yes.

Q. Based upon what Mr. Coody told you, did you believe that the Emanuels wanted you to deed the pump yard to PEMCO?

A. They knew nothing about it, that I know of.

Q. But at the time, did you think that that's what they wanted?

A. Well, I didn't question Coody.[7]

Coody was asked at trial whether he had paid any actual consideration to Roark for the pump yard property, and he answered, "No." When asked, "Then would you consider [the pump yard] to be a gift?" Coody said, "I don't know what you would consider it. I would put it more, in two years of work, it could have been appreciation."

¶ 24 Defendants do not suggest that Coody was peripheral to Plaintiff's operations. They agree, reinforced by the evidence, that Coody in essence ran the company with full responsibility for day-to-day operations, acquisitions, hiring and firing, signing checks, and more. In Coody's words, "And so whatever it took to keep the wheels on the car, that's what we had to do."[8] Plaintiff in its appellate brief says "Coody was not a part-time consultant, but was a man entrusted by the Emanuels to run their company. . . ."

¶ 25 With this in mind, we rely on the Supreme Court's early instruction on violation of a fiduciary duty owed to a corporation:

And it matters not whether the fiduciary relation be that of agent of the corporation, or of directors or other officers of the corporation, who are agents, as it can but act through agents; if the trust is betrayed to gain a private advantage, equity will declare constructive trust, for the question is not what position the one guilty of bad faith held, or by what name it was called, but did he violate his fiduciary relation to the corporation, and its confidence imposed in him? If he did, a constructive trust is declared in favor of the one whose confidence is violated.

*Powell v. Adler*, 1918 OK 158, ¶ 21, 69 Okla. 291, 172 P. 55.

¶ 26 Clearly the parties' positions on the facts, and the conclusions to be drawn from those facts, are conflicting as to Coody's role with Plaintiff and his duty to the company, both as they pertain to the commission payment and the conveyance of the pump yard. The trial court was required to weigh the evidence, determine credibility, and decide which version of the facts to believe. It is not our place to determine fact questions when there is competent, credible evidence to support the trial court's findings of fact on disputed issues. This is the case here.

¶ 27 The trial court could, and in fact did, find that Coody owed a fiduciary duty to Plaintiff which he breached in accepting the commission and persuading Roark to convey the pump yard property to him, and the weight of the evidence supports this decision. We reject Defendants' claim that the court's conclusion on this issue is against the weight of the evidence.

¶ 28 Defendants further argue that Plaintiff's claims for fraud/deceit and breach of fiduciary duty were time-barred by 12 O.S. § 95(A).[9] Our analysis has centered on the trial court's finding of breaches of fiduciary duty rather than fraud. It is well-settled that

---

7. Tr., vol. 1, p. 87, l. 20, through p. 88, l. 16.

8. Tr., vol. 1, p. 170, ll. 5–6.

9. The applicable parts of this statute are:

A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

. . . .

2. Within three (3) years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty; and an action on a foreign judgment;

3. Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud; . . . .

12 O.S.2011 § 95(A).

"[a]n appellate court has a common-law duty to affirm a trial judge's decision if it can be supported by any applicable legal theory." *Nichols v. Nichols*, 2009 OK 43, ¶ 10, 222 P.3d 1049. The fiduciary duty "analysis is fully explanatory of [Plaintiff's] rights and provides ample basis for the trial court's disposition." *Id.* Plaintiff's right to recover on this claim (indeed, as does its fraud claim) turns on its employment agreement with Coody, which he breached when he accepted the commission payment in contravention of his promise not to when he agreed to work for Plaintiff, and again when he had Roark deed to Pemco property the trial court found belonged to Plaintiff. These breaches are governed by 12 O.S.2011 § 95(A)(2) pertaining to actions on express contracts not in writing, arising from Coody's employment as Plaintiff's COO. In the absence of any quest for a constructive trust, Plaintiff's claims without question arose in May or June 2008 when it learned of the commission and the pump yard deed, and suit was filed in November 2010, clearly within the three-year statute of limitations delineated in 12 O.S. 2011 § 95(A)(2).

¶ 29 And, when the trial court imposes a constructive trust on the two items in dispute—the commission and the pump yard property—what is the applicable statute of limitations? The Supreme Court has held in a constructive trust case involving title to real property:

> "When the legal title to realty is in one person, and the real interest is in another, the statute of limitations will not run, as between them, until there is a renunciation of the trust, or until the party holding the legal title, by some act or declaration, asserts a claim adverse to the interest of the real owner."

*Dillon v. Helm*, 1945 OK 303, ¶ 12, 196 Okla. 140, 163 P.2d 539 (quoted citation omitted). In a more recent constructive trust case, the Supreme Court explained, "The *continuing trust character* of the award operates against the running of any limitation in favor of [Defendants] until [they] (*qua* constructive trustee) ha[ve] clearly repudiated the trust and the repudiation has been brought to the

attention of the trust beneficiary [Plaintiff]." *Nichols*, 2009 OK 43, ¶ 14, 222 P.3d 1049.

¶ 30 In the record it appears that in August or September 2008 Coody through his attorney contacted the Emanuels and offered to deed the pump yard to them. He delayed and rescheduled accomplishing this, and conveyance was never made. This militates against Defendants' limitations argument if actual repudiation of Plaintiff's right to the property sets the limitations clock ticking. If the time of repudiation is unsettled, perhaps the clearest indication of Defendants' rejection of Plaintiff's claims to both the commission and the pump yard is the filing of Defendants' answer in this lawsuit on December 29, 2010, in which they denied Plaintiff's claims to a constructive trust.

¶ 31 The trial court had sufficient evidence before it to find in Plaintiff's favor for breach of fiduciary duty by Coody and the court correctly rejected the statute of limitations defense to this claim. The court's judgment for breach of fiduciary duty is affirmed.

## II. Constructive Trust

¶ 32 The trial court, having found that Coody, while acting as agent and fiduciary of Plaintiff, received the $200,000 commission and the pump yard without Plaintiff's knowledge and in doing so, breached his fiduciary duty to Plaintiff, consequently imposed a constructive trust on the pump yard and the commission.

¶ 33 In *Cacy v. Cacy*, 1980 OK 138, 619 P.2d 200, the Supreme Court stated:

> The primary reason for imposing a constructive trust is to avoid unjust enrichment. A constructive trust is an involuntary or implied trust by operation of law. It is imposed against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. One obtaining legal title to property by fraud

or by violation of a confidence or fiduciary relationship, or in any unconscionable manner, can not [sic] equitably retain title.

*Id.* ¶ 7 (footnotes omitted). The Supreme Court has held in *Regal v. Riegel*, 1969 OK 145, 463 P.2d 680, "that the existence of a constructive trust must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to lead to but one conclusion, or as to leave no reasonable doubt as to the existence of the trust." *Id.* ¶ 12. We take this to mean, as stated in *Easterling v. Ferris,* 1982 OK 99, 651 P.2d 677, that the evidence must be "clear and convincing." *Id.* ¶ 12. Defendants argue this burden was not met. We disagree.

¶ 34 After review of the record, we conclude that, if believed by the trial court, Plaintiff's evidence was "clear, definite, unequivocal and satisfactory" and left "no reasonable doubt as to the existence of the trust." *See Regal,* 1969 OK 145, ¶ 12, 463 P.2d 680. Having found that Coody violated his duties to Plaintiff as a fiduciary and by doing so, caused specific detriment to Plaintiff, the trial court had clear and convincing evidence for the imposition of such a trust and was well within the ambit of the law of constructive trusts intended to avoid unjust enrichment and return property obtained by unconscionable conduct or questionable means.

*III. Vendee's Lien*

¶ 35 The trial court in the journal entry of judgment found: "A portion of the full purchase price paid by Plaintiff to David Roark for the oil and gas operation was attributable to the Pump Yard and Equipment, which Plaintiff did not receive. Plaintiff is therefore entitled to a vendee[']s (or "special") lien for the amount of $100,000 upon the Pump Yard . . . ."

¶ 36 Defendants argue the trial court erred in allowing Plaintiff a vendee's lien on the pump yard because Plaintiff failed to establish the elements of such a lien. Defendants assert that "Mr. Roark's voluntary deeding of the pump yard to Pemco and [Plaintiff's] lack of knowledge of the pump yard, clearly establishes [sic] that the pump yard was not part of any agreement between Roark and [Plaintiff]." "[B]ecause there is no evidence that there was an agreement for the sale of the pump yard, [Plaintiff] failed to establish the necessary elements of a vendee's lien under 42 O.S. § 30, which requires that there be a sales agreement in order to establish a vendee's lien." Defendants also argue there is no competent evidence establishing the value of the pump yard property to be $100,000 and that the statute of frauds applies.

¶ 37 Plaintiff argues:

It is undisputed that [Plaintiff] purchased the Roark operation for $1.4 million. . . . [T]he seller and buyer agree that the purchase was to include all parts of that operation. Mr. Roark testified that the pump yard was part of that operation. The purchase price was paid and received, but [Plaintiff] did not receive the pump yard. Therefore a special (vendee's) lien attached to the pump [yard] pursuant to 42 O.S. § 30.

Plaintiff further contends that "Coody was fully aware of the deal between [Plaintiff] and Roark, otherwise he would not have made the false statement to Roark about being owed by [Plaintiff]. Therefore, his company, PEMCO, is not a purchaser in good faith." Restated, Plaintiff argues that while serving as a fiduciary of Plaintiff, Coody, acting in his own self-interest, persuaded Roark to convey the pump yard property to Pemco, knowing that it belonged to his employer. Plaintiff relies on this provision: "One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back in case of a failure of consideration." 42 O.S.2011 § 30. "A vendee's lien is valid against everyone claiming against the debtor, except a purchaser or incumbrancer in good faith and for value." *Palmer v. Crews Lumber Co., Inc.,* 1973 OK 38, ¶ 19, 510 P.2d 269 (citing 42 O.S.1971 § 28).

¶ 38 The trial court's judgment reflects its belief that Roark and Plaintiff intended the sale to encompass Roark's entire operation—in Roark's words, "I'm through."

He testified he conveyed the pump yard property to Coody because he knew he needed to deed it to someone and Coody said deed it to his company because Plaintiff "owed him." If the trial court believed Roark on this point, and found that Defendants were neither purchasers for value nor in good faith, then the pump yard was subject to the sale agreement concluded on July 26, 2007, and conveyance to Pemco represents a partial failure of the $1,400,000 consideration paid for Roark's operation for which a vendee's lien will be imposed pursuant to 42 O.S. 2011 § 30.

¶ 39 Defendants urge us to find error in the assessment of $100,000 as the pump yard's value because there was no competent evidence establishing this value. As the former owner of the property, Roark was competent to testify as to its value when he owned it, which he said was $100,000, and his handwritten inventory list showing the pump yard's value to be $100,000 was admitted as Plaintiff's Exhibit 2.[10] We also note that Coody testified to his awareness of that valuation: "I will say that Mr. Roark made it clear to me that it was worth $100,000, the stuff in it and the yard. He made that clear. Over the two years we worked with him, he made that clear." We reject this proposition of error.

¶ 40 Citing 15 O.S. 156 and the absence of a written agreement to sell the pump yard, Defendants urge us to reverse the vendee's lien as violative of the statute of frauds. As Plaintiff points out, partial or complete performance of an oral contract removes it from the statute of frauds, rendering the contract enforceable, and this contract was performed. See *Gibson v. Dunham*, 1959 OK 182, 346 P.2d 327. Even if this oral contract were subject to the statute of frauds, the statute of frauds is not a defense to the imposition of a vendee's lien. In *Schuman v. Board of County Commissioners of Muskogee County*, 1939 OK 79, 184 Okla. 339, 87 P.2d 151, the Supreme Court cautioned:

> But the [vendee's] lien is not based solely upon the contract of purchase, for it has been allowed where the contract was wholly unenforceable on account of the statute of frauds. The real basis of the vendee's claim is essentially quasi-contractual and the lien is merely a remedial device to guarantee, so far as possible, a restoration of the status quo.

*Id.* ¶ 15 (citation omitted). We also reject this proposition of error.

### IV. Attorney Fees and Interest

¶ 41 Defendants assert trial court error in its post-judgment award of attorney fees of $5,441.25 [11] and prejudgment interest to Plaintiff. Plaintiff argues it is statutorily entitled to attorney fees as the prevailing party pursuant to 42 O.S.2011 § 176: "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action." 42 O.S.2011 § 176. Because Plaintiff is entitled to the imposition of a vendee's lien, Plaintiff is entitled to recover attorney fees and costs as the prevailing party on this claim pursuant to this statute. We affirm the award.[12, 13]

¶ 42 Plaintiff is entitled to recover prejudgment interest pursuant to 23 O.S.2011 § 6 on its claim to the commission funds.[14] Section 6 states:

> Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to

10. Tr., vol. 1, p. 97, ll. 9–17, and p. 101, ll. 15–21.

11. According to the trial court's order awarding attorney fees and prejudgment interest, this fee amount represents 25% of the total billable amount of Plaintiff's attorney fees ($21,765) and appears to relate solely to the lien claim.

12. Defendants also take issue with the amount of the attorney fee as excessive. There is no citation of authority to bolster this argument, and pursuant to Supreme Court Rule 1.11(k)(1), 12 O.S.

Supp. 2015, ch. 15, app. 1, it will not be considered.

13. Because we affirm the lien claim judgment for Plaintiff and the subsequent attorney fee award on the lien claim, Defendants' request for an attorney fee upon reversal of this issue is denied.

14. Although Defendants argue it was improper to award prejudgment interest for damages related to the pump yard because the amount of damages was not a sum certain as required by 23 O.S.2011 § 6, no such interest award on the

recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

23 O.S.2011 § 6. Defendants argue the damages recoverable for the commission payment were not ascertainable. It is clear they were. Because Plaintiff is the prevailing party on its claim to the liquidated amount of $200,000, the award of prejudgment interest on this amount is not error and is affirmed.

## CONCLUSION

¶ 43 We see no error to be corrected on appeal in the trial court's judgment in Plaintiff's favor and therefore no basis for a new trial. We affirm the orders of the trial court granting judgment to Plaintiff, denying Defendants' motion for new trial, and granting Plaintiff's application for attorney fees, costs and interest.

¶ 44 **AFFIRMED.**

GOODMAN, C.J., and FISCHER, J., concur.

pump yard appears in the trial court's order but     is expressly excluded.